## Punderson *v.* Brown.

### In the Court below,

ELIJAH BROWN, *Petitioner ;* EBENEZER PUNDERSON, JAMES ALLYN, and EBENEZER PUNDERSON, jun. *Respondents.*

THIS was a petition in chancery, praying for liberty to redeem certain lands.

The facts, as they appear on the petition, and in the decree of the Court, are, that on the 1st day of October, 1785, the petitioner mortgaged the lands in question to *Jeremiah Halsey* and *John Bellows*, to secure the payment of 92*l.* 2*s.* 9*d.* lawful money, by the 1st day of

An execution may be levied upon an equity of redemption as real estate, and the creditor, after having the same appraised and set off to him, under the statute, acquires all the rights of the mortgagor in the premises. The mortgagor cannot afterwards redeem.

1803.

PUNDERSON
v.
BROWN.

April then next; that on the 5th of January, 1786, *E. Punderson*, senior, levied an execution, in his favour, against the petitioner, on the mortgaged premises, and procured the equity of redemption to be regularly set off to him, at the appraisal of 42*l.* 10*s.* in part satisfaction of the execution; that nine acres, part of the premises, had been, before this time, sold for taxes, and sundry other taxes were then due; that, in July, 1786, *E. Punderson*, senior, paid all those taxes, the time given, by law, for the redemption of the nine acres being not then expired, and received a deed of release from the purchaser; that on the 6th of February, 1787, said *E. Punderson*, senior, conveyed, by deed, with covenants of seizin and warranty, the premises to *E. Punderson*, junior, and on the 12th of March, 1787, *E. Punderson*, junior, paid to *Halsey* and *Bellows* the whole of the mortgage money, and took an assignment from them of all their right, title, and interest to the mortgaged premises; that, on the 1st of April, 1787, *E. Punderson*, junior, entered upon the premises, and received the whole rents and profits thereof, till the 6th of March, 1796, when he sold and conveyed the same, by deed, to *James Allyn*, who was in possession thereof, taking the whole rents and profits, from said 8th of March to the date of the petition.

The Superior Court, by a committee, stated an account of the premises, and the rents and profits, on the one hand, and of the monies advanced, the interest thereon, and the betterments of the lands, on the other, from which they found a balance due from the petitioner of $376 81, and thereupon decreed a redemption of the premises in favour of the petitioner, upon the payment of that sum, within a given time.

The only question in the case, before this Court, was, whether this estate be a redeemable estate ?

*Halsey*, for the plaintiffs in error, contended, that the law of Connecticut authorizes the levy of an execution upon the equity of redemption, it being a property of value ; that, being real property, it must be appraised, as other real property ; and that, when appraised, and set off, the fee-simple passes to the creditor, as in other cases of levy on real estate, and from that time is not redeemable.

*A. Spalding* and *Goddard*, for the defendant in error, contended, that a levy of an execution on mortgaged premises, creates only a lien, and the creditor is considered only as a second mortgagee, and liable to have the estate redeemed, upon all the incumbrances being paid ; that our statute describes the property liable to be taken on execution, as that which a man holds in his own right, in fee ; and that, if appraisers set off in fee, they must necessarily settle many important questions, such as the amount due on the mortgage, taking into view the rents and profits, betterments, payments on the mortgage, &c. They must also decide, whether the deed be not a forgery, usurious, or fraudulent ; and thus exercise the powers of a court of chancery and of law.

The judgment of the Superior Court, treating this as a redeemable estate, was reversed, unanimously.

BY THE COURT. The facts respecting the taxes, and the nine acres incumbered thereby, may be laid out of the case ; because, first, it does not appear by the decree, that the appraisers knew of this incumbrance, and if they did not, the petitioner has sustained no injury ; but, sec-

ondly, if this incumbrance was considered, still it cannot affect the case, for the nine acres had become irredeemable, the purchase money not having been paid, by the petitioner, within the time limited by law.

The only question, then, is, whether, under the circumstances of this case, there was any right in the petitioner to redeem, the equity of redemption having been taken by *Punderson's* execution, and transferred to him?

It was argued by the counsel for the defendant in error, that an equity of redemption cannot be taken on an execution, for that the statute (*a*) authorizes a levy on " all lands and tenements, belonging to any person, in " his own proper right, in fee," &c. To this it may be answered, that the policy of our law is, that every species of property should be responsible for the payment of debts ; and that, if the construction contended for should prevail, no estate for life, or years, could be subjected ; yet the practice is otherwise. But the estate, which a mortgagor has in the mortgaged premises, is real estate, and often of great value. It descends to heirs, under the statutes of distribution, and does not go to executors ; it passes by words in a devise, which pass real estate ; and it is ever considered as such in substance, though, technically speaking, the legal right is in the mortgagee. It may be added, that it would operate great injustice, to give this statute a construction, by which equities of redemption should be exempt from liability to the payment of debts ; nor have the Superior Court, it is believed, ever admitted such a construction.

The principle, therefore, adopted by the Superior

(*a*) *p.* 174.

Court, in passing this decree, must have been, that the levy of an execution upon an equity of redemption, in every case, operates like a second mortgage ; and, of course, that property thus taken is redeemable from the execution creditor. This is not a legal principle.

In examining this principle, the statute must govern; since the right to take lands by execution is given by the statute. After describing the proceedings to be had under an execution levied on land, the legislature declare, " and all executions, levied upon such houses and " lands, being, with the return of the officer thereon, re- " corded in the records of lands, in the town wherein " such houses or lands are situate, and also returned into " the clerk's office of the court, out of which the same is- " sued, and there recorded, shall make a good title " to the party, for whom they shall be taken, his heirs " and assigns, forever." It is undoubtedly a fair construction of this act, that whatever interest the debtor had, should, by the levy, become vested in the creditor. But the principle adopted by the Court, in this case, transfers to *Punderson* a mere redeemable interest, or a mortgage, which is personal estate. The equity of redemption, however, in *Brown*, the petitioner, was a thing totally different, to wit, real estate. Their principle leaves *Punderson* still a creditor, and *Brown* a debtor, to the amount of the 42*l*. 10*s*. and the execution entirely unsatisfied. Indeed, the creditor has obtained only a lien on the property, which may be removed, by the payment of the debt. The appraisal is, therefore, idle. But such ideas are not suggested by the statute, and, therefore, cannot be supported. To the argument of the counsel for the defendant in error, that if the levy of an execution be not treated merely as a second mortgage, it will follow, that the appraisers may be obliged to decide many very

O

important questions, it may be replied, first, that appraisers of land upon executions, according to the universally acknowledged construction of the statute, may be obliged to decide very nice and interesting questions ; as where the fee is levied upon, and it is incumbered by a tenancy by the curtesy, or dower, or other life estate, or by a tenancy for years.   Questions may here arise, as to the value of those incumbrances, or whether the instruments, by which they were created, are usurious, fraudulent, or forged, or as to the legal effect of those instruments.   So, in case the estate of the mortgagee should be levied upon, the appraisers may be obliged to decide, also, as to the validity of the deed, and the amount due, rents and profits, betterments, &c. as circumstances may require. But, it will be difficult to see how such a levy should operate as a second mortgage.   It is not here asserted, that the interference of a court of chancery may not be proper, in a case, which may be imagined.   An appraisal may be made under a misapprehension respecting the amount of the debt, the quantity, quality, or title to the property, and in many other ways, when the aid of chancery may be necessary to the attaining of justice.   But none of those embarrassments occur in the case before us ; for, secondly, the petition and decree shew, that no difficulty here existed ; the appraisers had no question, but the most simple, to settle ; the amount of the incumbrance was the debt due to *Halsey* and *Bellows* ; there were no rents and profits, or betterments, to be adjusted, for the mortgagor had remained in possession.   When the value of the land was ascertained, and the principal and interest of the debt due to *Halsey* and *Bellows* deducted, the residue was the value of *Brown's* equity of redemption.   This paid only *a part* of *Punderson's* execution.   Why, then, did not this levy take the whole interest of *Brown*, and, consequently, his right to redeem ?

The legal estate is vested in *Punderson*, by contract; the equity of redemption, by operation of law, is transferred to him; and the legal and equitable interest being gone, what has *Brown* left? Had *Brown* released his equity to *Punderson*, surely the whole interest would have been vested in *Punderson*. It is as effectually done, by the levy, in pursuance of the statute, as it could have been, by deed; and with no safety can the Court adopt any other principle.

Suppose A. mortgages to B. land worth $ 1000 to secure the payment of $ 500. C. has an execution against A. for $ 500, and levies it on his equity of redemption, and procures it all set off to him. In this case, B. can foreclose A. and C. C. can pay B. $ 500, and become vested with the whole. In the cases put, suppose C.'s execution is $ 250, and it is levied on an undivided interest in the equity of redemption, in the proportion that 250 bears to 500. If C. should purchase B.'s mortgage, can A. redeem from C. paying $ 750? He cannot; for the property levied upon is irredeemable, and C. has a right to an undivided fourth part of the whole property, subject only to be foreclosed by the mortgagee, or his assigns.

For these reasons, it appears to this Court, that *Brown*, in this case, had no interest in the mortgaged premises, after the levy of *Punderson's* execution; and, therefore, that the judgment of the Court below, permitting him to redeem, is erroneous.