MIDDLETOWN SAVINGS BANK *vs.* WILLIAM JARVIS AND OTHERS.

An equitable interest in shares of stock can be attached and sold upon execution in the same manner as a legal interest.

BILL OF INTERPLEADER. The respondent Jarvis had transferred to the Middletown Savings Bank sundry shares of the stock of the Middlesex Quarry Company as collateral security for a loan, and the savings bank had taken and held a certificate in its own name for the stock. The equitable interest of Jarvis in the stock was afterwards attached by one Rowland, a creditor; and still later an assignment was made by Jarvis to other creditors of the same equitable interest. Rowland afterwards obtained judgment and execution in his suit and had the stock sold on the execution, and the same was purchased at the sale by the respondent French. The attachment, levy of the execution, and the sale, were made in the manner provided by statute for the attachment and sale upon execution of stock of which the legal title is held by the debtor. The bill cited in the different claimants of the stock and prayed that they might interplead and their rights be determined by the court. The superior court found the facts at great length upon the bill and their answers, and reserved the questions arising on the facts so found for the advice of this court. The case will be sufficiently understood from the opinion of the court without a further statement of the facts.

*H. B. Harrison*, for the respondent French.

1. By his transfer to the bank Jarvis did not divest himself of all his rights of ownership in the stock. He did not sell the stock. He expressly "pledged" it as "collateral security." The bank got a mere lien on the stock, but Jarvis continued to own the stock subject to that lien. Willard's Eq., 455; 4 Kent Com., 138; *Allen* v. *Dykers*, 3 Hill, 593; *Dykers* v. *Allen*, 7 id., 498; *Wilson* v. *Little*, 2 Comst., 443; *Merchants Bank* v. *Cook*, 4 Pick., 405; *Quiner* v. *Marblehead Social Ins. Co.*, 10 Mass., 476; *Nesmith* v. *Washington*

*Bank,* 6 Pick., 324; *Vansands* v. *Middlesex County Bank,* 26 Conn., 144; *Colt* v. *Ives,* 31 id., 25; *Stevens* v. *Hurlbut Bank,* id., 146; Story on Bailments, § 287; 2 Story Eq. Jur., § 1030; 2 Hilliard on Mort., 517; 1 Parsons on Cont., 595; *De Lisle* v. *Priestman,* 1 Browne, 176; *Richards* v. *Davis,* Am. Law Reg., June, 1859, p. 483. Jarvis would have remained owner of the stock in equity, even if the transaction between him and the bank had been technically a mortgage as distinguished from a pledge. But the transaction was in law and fact a pledge as distinguished from a mortgage. *A fortiori* he remained owner of the stock, the bank having only a special property therein.

2. The policy of our law requires that all the property of a debtor, equitable as well as legal, should be held responsible for his debts. Our statutes construed in view of this policy have been held to provide for the taking by attachment and execution of equitable interests as well as legal ones in every species of property, personal as well as real. *Punderson* v. *Brown,* 1 Day, 93, 96; *Hitchcock* v. *Hotchkiss,* 1 Conn., 470; *Davenport* v. *Lacon,* 17 id., 278; *Johnson* v. *Connecticut Bank,* 21 id., 148; *Bunnell* v. *Read,* id., 586; *Flagg* v. *Platt,* 32 id., 216.

3. The statute relating to the taking of stock by attachment and execution should be so construed as to carry out that policy rather than hinder it. 1st. The statute in express words exposes to attachment and execution " *all rights*" which "any person" may own " *in* the stock of any bank," &c. 2d. The statute makes no discrimination between rights technically legal and rights technically equitable; and there is no reason why it should; for rights technically equitable, in stock as well as in other property, are often far more valuable than other rights technically legal which may happen to exist as mere liens upon the same property. 3d. The statute points out a way, and but one and the same way, in which such " rights," whether legal or equitable, can be taken by attachment and execution. 4th. The interest of Jarvis is fully embraced under the word "shares;" at any rate it is embraced under the. phrase " *all rights or*

*shares.*"   Revision of 1866, p. 5 § 19, p. 52 § 237.   5th. By attaching them " as the property" of Jarvis, the officer covered with his attachment every right and interest, legal and equitable, which Jarvis had in them.   *Hitchcock* v. *Hotchkiss*, 1 Conn, 470, 472 ; *Camp* v. *Smith*, 5 id., 80, 84.   6th. The attachment, levy of execution and sale being made in precise compliance with every requirement of the statute, necessarily operated to vest in French all the rights of Jarvis in the stock—to wit, full ownership of the stock, subject to the bank's lien.   To hold otherwise would nullify the statute.

4. The rights and interest of Jarvis could not have been attached by process of foreign attachment.   1st. Stock can never be so "*concealed*" that it "*cannot be found to be attached.*"   For the purposes of attachment and execution the statute gives it an assumed locality in the hands, not of any holder of a certificate, but of the secretary of the corporation, so that it can be by legal assumption there " found" and "attached."   As it is capable of being " found to be attached" only there at any time, so it is capable of being there "found to be attached" at all times.   2d. Foreign attachment (except as to debts) is simply a substitute for the ordinary mode of attachment by physical seizure ; and applies only to goods or effects which, being corporeal, are capable of being physically seized and physically " concealed."   The " goods or effects must be such that the garnishee on demand of the officer can " expose" them to be " taken" on the execution, and that the officer can lawfully take and sell on execution the identical things so "exposed."   *Picquet* v. *Swan*, 4 Mason, 443, 446, 464 ; *Evans* v. *Monot*, 4 Jones Eq., 227 ; *Fitch* v. *Waite*, 5 Conn., 118 ; *Risley* v. *Welles*, id., 431 ; *Grosvenor* v. *Farmers and Mechanics Bank*, 13 id., 104 ; *Smith* v. *Kennebec R. R. Co.*, 45 Maine, 547 ; *Clark* v. *Viles*, 32 id., 32 ; *Stone* v. *Deane*, 5 N. Hamp., 502 ; *Hudson* v. *Hunt*, id. 538 ; *Scofield* v. *White*, 29 Verm., 330 ; *Briggs* v. *Walker*, 1 Foster, 77 ; Drake on Attach., § 479.   3d. This interpretation of the statute of foreign attachment is confirmed by the history of that statute.   It was first enacted in 1726.   It then as now permitted the garnishee to exonerate himself by " ex-

posing" the property attached in his hands, to be "taken" on the execution. It did not then provide any more than it does now any mode of levying execution upon the property so "taken," but left the officer to levy upon it in the ordinary way. The statute therefore contemplated only "goods and effects" upon which at that time an execution could have been in some way levied. But at that time no way had been provided for the levy of execution upon stock. Stock not being subject to execution at common law, first became subject thereto in this state by the statute of 1805, nearly eighty years after the enactment of the statute of foreign attachment. The language of the statute now is the same as it was in the beginning, so far as the present question is concerned, and must have the same interpretation now as then. Rev. Stat. of 1808, pp. 60, 61, 62; Ang. & Ames on Corp., ch. 16, § 12; *Howe* v. *Starkweather*, 17 Mass., 240; *Denton* v. *Livingston*, 9 Johns., 96.

5. But if the stock could have been attached by foreign attachment, *non sequitur* that there was no other way of attaching it. 1st. It is often possible to attach by foreign attachment "goods or effects" which the officer might by diligence get at and attach by physical seizure. In such cases the plaintiff has his election to attach in either of the two ways. 2d. Rowland having attached in a way specially authorized by statute, his attachment was good, even if it was possible for him to attach in a different way. *McCall* v. *Byram Man. Co.*, 6 Conn., 435.

6. But if the "rights" and interest of Jarvis could not be attached in the way so pointed out by statute, they could not be attached at all. If Rowland's attachment was void, then it follows that a debtor owning most valuable stocks can put them beyond the reach of attachment and execution by pledging them as collateral security for a trifling debt. Such a conclusion should be avoided, if by any rational construction of the statute it can be.

*Dutton* and *McFarland*, for sundry assignees of the stock. The interest if any which Mr. Jarvis had in the stock at

the time of the levy was an equity of redemption. An equity of redemption in stock or any other chattel cannot be taken and sold on execution. The only mode of subjecting such interests is by bill in equity or process of foreign attachment. The statute of foreign attachment is always liberally construed to extend the remedy. *Treadway* v. *Andrews*, 20 Conn., 384. Stock is a chattel of a peculiar kind. The only mode by which a creditor may seize it for the satisfaction of a debt is prescribed by statute, and the provision of the statute must be strictly complied with. *Morgan* v. *Thames Bank*, 14 Conn., 103. The statute has provided one mode and only one by which a creditor may attach the stock itself and have it levied upon and sold on execution. The provisions of the statute manifestly refer to legal and not equitable interests in stock. Revision of 1866, p. 5, sec. 19. The " rights or shares " themselves are to be attached, and such rights and shares, together with the interest, rents and profits, shall be holden to respond to the judgment that may be recovered ; and it is made the duty of the proper officer of the corporation to furnish the officer serving the writ with a certificate specifying the number of shares held by the defendant with the incumbrances thereon, the incumbrances here referred to being such liens as the corporation may have on the stock. The execution is to be levied upon the rights or shares themselves, and the officer is required to leave a certificate that he levies upon the rights or shares. The officer is to post the rights or shares for sale, and he is to give the purchaser an instrument in writing, " conveying to him such rights or shares ; " and the statute further provides that the purchaser shall " thereupon be entitled to all dividends and stock, and to the same privileges as a member of such company or corporation as such debtor was entitled to." Revision of 1866, p. 52. sec. 237. It is plain that these provisions apply to the case where the legal title to the stock is in the debtor, or, what is the same thing, in a fraudulent grantee. They are framed for subjecting the stock itself and not an equity of redemption in the stock pledged. As applied to the latter case they are meaningless. When a man has hon-

estly transferred his stock he is certainly not the holder or owner of it. He may have a right to again become the owner of it by redeeming it. In the meantime, and until he does redeem it, the stock and dividends do not belong to him and cannot be attached or sold as his. There are no means whatever provided for ascertaining the value of the equity of redemption or of removing the lien and obtaining possession of the stock in such a case. The rights of the debtor would be sacrificed, for the purchaser could have no means of knowing that the thing he purchased was of any value. However valuable therefore it might really be, it could never be sold for more than a merely nominal sum. At common law even an equity of redemption in lands could not be taken on execution. 1 Hilliard on Mort., 375. By our law it may. But there is no analogy between an equity of redemption in lands and in the right to redeem a chattel pledged. The law considers the mortgagor the real owner of the land. He may maintain trespass, waste, and even ejectment against all but the mortgagee. It is subject to dower, passes under the description of real estate in a devise, and descends to heirs. It is something visible and tangible, and the creditor takes so much of the land itself as may be required to satisfy his demands. The law has provided a mode of ascertaining its true value. This the appraisers may readily do, for the amount of the incumbrances must appear on record. The law is well settled that an equity of redemption in a chattel cannot be taken and sold on execution. In *Scott* v. *Scholey*, 8 East, 467, it was held that an equity in an estate for years could not be taken on execution. The same point was decided in *Metcalf* v. *Scholey*, 5 Bos. & Pul., 461. In *Badlam* v. *Tucker*, 1 Pick., 389, it was held that an equitable interest in certain shares in a vessel could not be taken on execution. In *Holbrook* v. *Baker*, 5 Greenl., 309, the same point was decided in respect to the equity of redemption in a clock pledged. In *Thompson* v. *Stevens*, 10 Maine, 27, the same was held with regard to a right to recover a horse. In *Sargent* v. *Carr*, 12 Maine, 396, the same point was ruled in the same way, and the court decided that it made no difference that the creditor had ten-

dered to the pledgee the amount due on the pledge. In *Lyle* v. *Barker*, 5 Binney, 457, a like decision was made in the case of an equity of redemption. In *Haven* v. *Low*, 2 N. Hamp., 13, the same was held in the case of an equity of redemption in a sloop mortaged. In *Anderson* v. *Doak*, 10 Ired. Law R., 295, the same rule was applied. In *Wilkes* v. *Ferris*, 5 Johns., 335, a debtor had assigned and conveyed a lot of goods, accounts and bills receivable, and the levy of an execution on his equitable interest in the property assigned was declared to be void. The interest if any which Mr. Jarvis had in this stock at the time of the attachment was a mere chose in action. The proceedings on the attachment were no notice to the bank or any one else of any claim to a lien on his remaining interest in the stock. This interest was as much subject to his control and disposition after as before the attempted attachment. Therefore the assignees of his remaining interest in the stock would obtain a valid lien as against French. The same would be true of a creditor factorizing the bank after the pretended attachment.

McCurdy, J. The petition, answers and finding of the facts in this case are quite voluminous, but the point in issue is a simple one. Do the attachment by Rowland of the shares in question and of Jarvis's right, title and interest in them, the levy of the execution, and the sale at auction to French, constitute a valid conveyance to him?

It is not claimed that there is any defect in the form of the proceedings, if in such a case there can be any legal attachment and levy. The provisions of our statute confessedly must govern, and it becomes necessary to refer to its precise language to ascertain the intent. The terms are, " the rights or shares which any person may own in the stock of any bank, banking association, insurance company, turnpike company or other corporation, together with the interest, rents and profits due and growing thereon, shall be liable to be attached in any action and levied upon, &c." Now it is an acknowledged fact that after the assignment to the savings bank, Jarvis had an interest or " right " in these shares

which was a very valuable one, and which was the subject of divers conveyances from him. The title of all the parties depends equally on this fact. But it is urged on the part of the respondents opposing the title of French, that at common law there can be no attachment of an equitable interest in a chattel; and although our statute varies that principle, yet it provides only for a taking of the rights or shares themselves as such, and not for a mere interest, as an equity of redemption in them. We see no reason for adopting so narrow a view of the meaning of the statute. The language is broad, and expressly includes not only the shares of stock but the rights in them. Words can hardly be more plain.

And the purpose is as obvious as the language. The object is to subject the whole of every man's property to the payment of his debts. The courts favor such a construction as will produce this result. " The policy of our law is that every species of property shall be responsible for the payment of debts." *Punderson* v. *Brown*, 1 Day, 96 ; *Flagg* v. *Platt*, 32 Conn., 216. See also the opinion of Ch. J. Williams in *Davenport* v. *Lacon*, 17 Conn., 280. By various decisions in this state it has been held that the interest of a *cestui qui trust*, a tenant in common, a joint tenant, a partner, &c., may be taken. An equitable interest may be the most valuable part of the shares of a corporation, and it might lead to monstrous injustice if this could be screened from the search of the law.

It is said, however, that the proceedings might have been by foreign attachment or a petition in equity. We do not see very well how the case comes within the provisions of the law of foreign attachment, but it certainly does come precisely under the statute to which we have referred, and the present proceeding in equity is an appropriate mode for establishing the title, the party having first taken the initiatory steps at law.

It is said, again, that there is no mode of ascertaining the value of the equity, and so the bidding at auction must be in the dark, and great injustice may be done to defendants. A similar difficulty exists in the levy of an execution on an equi-

ty of redemption in real estate, as in many cases the actual amount of the incumbrance upon the property may not be ascertainable without a lawsuit.

We have no doubt that the title of French is a valid one, and that he has a right to the stock, dividends &c., upon his paying to the petitioners the amount of their balance.

In this opinion the other judges concurred.

---

# SUPREME COURT OF ERRORS.

## LITCHFIELD COUNTY, APRIL TERM, 1866.

### Present,

HINMAN, C. J., BUTLER, McCURDY, PARK AND CARPENTER, Js.