Smith et al. *v.* Gilbert.

---

ANNIE U. SMITH ET AL. *vs.* HENRY W. GILBERT.

71 149
75 568

Third Judicial District, New Haven, June Term, 1898. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

Public policy forbids that an interest in property, real or personal, which is so remote, contingent and of uncertain value that it cannot be fairly appraised or sold on execution, should be open to attachment; nor do the statutes of this State authorize the attachment of such an interest.

A testator gave his estate to his wife for life with remainder to his two sons equally, but provided that if either of the sons should die before his wife, leaving lawful issue, such issue should take the portion of the parent so dying. Pending the settlement of the testator's estate and during the lifetime of his widow, the plaintiffs attempted to attach the interest of one of the sons in the estate, which comprised land and money in bank. *Held* that they secured nothing by their attachment, either in the real or personal estate.

The process of foreign attachment is not adapted to secure an interest

in property to the possession and enjoyment of which the defendant may never succeed.

Argued June 8th—decided October 18th, 1898.

ACTION in the nature of assumpsit against a non-resident, brought to the Superior Court in Fairfield County where the defendant filed a plea to the jurisdiction and the court, *Robinson, J.*, upon an agreed statement of facts, reserved the cause for the consideration and advice of this court. *Judgment advised for defendant.*

The case is sufficiently stated in the opinion.

*J. Belden Hurlbutt* and *H. Whitmore Gregory*, for the defendant.

Under the terms of the will the defendant's interest at present in the estate of his father is not greater than that of a contingent remainder. *Wheeler* v. *Fellows*, 52 Conn. 238; *Farnam* v. *Farnam*, 53 id. 261; *Smith* v. *Edwards*, 88 N. Y. 92; *Reed's Appeal* (Penn.), 10 Cent. Rep. 82; *McClure's Appeal*, 12 Penn. 418; *Hunt* v. *Hall*, 37 Me. 364. A contingent remainder is not attachable. Freeman on Execution, §§ 123, 178; *Watson* v. *Dood*, 68 N. Car. 28; *Young* v. *Young*, 89 Va. 677; *Kendall* v. *Gibbs*, 5 R. I. 525; 3 Amer. & Eng. Ency. of Law (2d ed.), 210; *Barker* v. *Copenbarge*, 15 Ill. 103; Drake on Attachment, § 551; *Rich* v. *Walters*, 22 Pick. 563. Even if the interest of this defendant is vested, no attachment can be had so as to give jurisdiction. Our statute for the levying of an execution upon land, plainly contemplates a title and also a possession; in other words that both the right of possession and title to the property attached, must be present in the defendant. It would be practically impossible to ascertain the value of the estate of the defendant. There is not only a life tenant, but also possible defeasance — assuming it to be vested. Further, the interest of this defendant cannot be set out to this plaintiff by metes and bounds. But there is another feature which adds, in fact, another speculation to the whole matter. The uncertainty that this defendant would ever receive, if he survives the life-tenant, any real estate in the distribution of the

estate.   Personal property entirely may be sent out to him.
The service of the writ upon the executor does not operate
to attach any property, or legacy or distributive share of the
defendant in the estate.   Gen. Stat. §§ 559, 611.   Our stat-
utes relative to foreign attachment would seem to contem-
plate an attachment, by garnishment of the executor, of only
such legacies or distributive shares as pass directly from the
executor to the legatee.   Gen. Stat. §§ 1231, 1253, 1262,
1264, 1265; Pub. Acts of 1895, p. 707.   The legacy must be
one that is due or may become due.   Here " due " means
" payable."   It means at least an existing obligation that can
be enforced at some time ; not a possibility standing on a
contingency.   It must be something the court in *scire facias*
can value.   *Sand-Blast File-Sharpening Co.* v. *Parsons,* 54
Conn. 310; *Coburn* v. *Hartford,* 38 id. 290; *Bent* v. *Dutcher,*
3 Day, 440.

*George P. Carroll,* for the plaintiffs.

Subject to the life estate of Mrs. Gilbert, the fourth article
gives a vested remainder interest in an undivided half of the
testator's property, to each of his two sons.   *Mansfield* v. *Shel-
ton,* 67 Conn. 390 ; *Miller* v. *Keegan,* 14 Ind. 502; *Guyther* v.
*Taylor,* 3 Ired. Eq. 323 ; *Hilliard* v. *Kearney,* Busb. (N. Car.)
Eq. 221 ; 2 Jar. Wills (4th Am. ed.), 406, note ; *Farnam* v.
*Farnam,* 53 Conn. 261; *Johnes* v. *Beers,* 57 id. 295.   But at
the very least, the two sons take an estate in fee, defeasible
in case they die in the lifetime of the widow, leaving issue.
*Bullock* v. *Seymour,* 33 Conn. 289.   Even though such in-
terest is a mere life estate or a determinable fee, it is liable
for his debts.   The determinable interest of a mortgagor is
attached constantly.   A remainder or reversionary interest
in real estate is attachable.   *Davenport* v. *Lacon,* 17 Conn.
276 ; 3 Amer. & Eng. Ency. of Law (2d ed.), 210.   The in-
terest of a joint tenant is attachable.   *Remington* v. *Cady,*
10 Conn. 47.   Any debt, legacy, or distributive share that is
or may become due to the defendant may be attached by
leaving a proper copy "with the executor . . . . of such
estate, or at the usual place of abode of such garnishee."

Gen. Stat. § 1231; *Ward's Appeal,* 52 Conn. 565, 567. This estate has never been settled; therefore the title to the personal estate has always remained in the executor. *Johnson* v. *Connecticut Bank,* 21 Conn. 156. He also had the custody of the real estate. Gen. Stat. § 577. The real estate was attached as prescribed by Gen. Stat. § 916. The personal property in the executor's hands was attached as prescribed by Gen. Stat. § 1231. Indeed, so far as the garnishee feature of the writ is concerned, no copy need have been left except with the garnishees. Gen. Stat. § 1245; *Fuller* v. *Foote,* 56 Conn. 341.

HALL, J. The complaint describes the plaintiffs as residents of Maryland, the defendant as a resident of Wisconsin and as owning property in Connecticut.

By the doings of the officer, as set forth in his return upon the original complaint, the plaintiffs claim to have attached, under §§ 910 and 916 of the General Statutes, the defendant's interest in the land owned by his father at the time of his death, and to have attached, under §§ 1231 and 1245, the legacy or distributive share to become due to the defendant from the estate of his father, and to have garnisheed the defendant's interest in certain funds belonging to his father's estate, deposited in certain savings banks.

The defendant appeared by attorney for the sole purpose of pleading to the jurisdiction of the court. The substance of his plea is, that all the parties to the suit are non-residents; that no service was made upon the defendant, and that at the time of the alleged attachment the defendant owned no interest in the property described in the officer's return, and no property in Connecticut subject to attachment; and that there was no debt, legacy or distributive share due, or to become due him from his father's estate, liable to attachment, and no sum due him from said savings banks liable to garnishment.

It is admitted that all the money and property claimed to **have been attached,** belongs to the estate of the defendant's father, and that the defendant owns no property in this State,

except such interest in said attached property as he may have under the third and fourth provisions of the will of his father, Harmon Gilbert, executed in 1889 and admitted to probate in 1893, which provisions are as follows : " *Third.* I give to my wife, Mary Elizabeth Gilbert, during the term of her natural life, the use and income of all the rest, residue and remainder of my estate both real and personal, of every description whatsoever and wheresoever it may be, which I may possess at the time of my decease. This shall include the right to cut all necessary wood for fuel, or timber for such repairs as may be needed upon the buildings and adjacent fences, and it is my wish that the said buildings and fences about the same be kept in proper repair so long as my wife shall use and occupy them as aforesaid. *Fourth.* After the decease of my wife to whom the use of my property has been given as aforesaid, I order and direct that my estate, both real and personal, be divided equally between my two sons, Thomas F. Gilbert of Wilton, and Henry W. Gilbert of Poughkeepsie aforesaid, to wit: one equal share to said Thomas F. and one equal share to said Henry W., and if either of my said sons shall die before the decease of my said wife, and leave lawful issue, it is my wish that said issue shall inherit in the place of the parent so deceased."

As it is not claimed that the Superior Court has jurisdiction of the person of the defendant, who is a non-resident upon whom no service was made in this State, the power of the court in this case is limited to an appropriation of the defendant's property within this State, to the payment of the plaintiffs' debt; and so the sole foundation of its jurisdiction is the existence in this State of property which, under process of court, may be thus taken and appropriated. *Easterly* v. *Goodwin*, 35 Conn. 273 ; *O'Sullivan* v. *Overton*, 56 id. 102.

Unless the property in question is of such a character that it may be subjected to the payment of the defendant's debt, under our statute laws regulating the manner in which property may be taken upon *mesne* and final process, the Superior Court cannot entertain this action.

The estate of Harmon Gilbert at the time of the claimed

attachment, consisted of real estate of the appraised value of about $2,000, household furniture of the appraised value of $200, and of about $4,000 in money. The estate has not yet been settled. The widow is still living, as are the two sons, Thomas F., and the defendant. Each of said sons had a child at the date of the will. The defendant has another child, born since the testator's death. All said children are still living.

In 1647 it was laid down as the foundation of our insolvency law, that "every man should pay his debts with his estate, be it what it will be, either real or personal." 1 Col. Rec. 151. In 1650 the property subject to attachment was described as "goods" and "lands." 1 Col. Rec. 511. In 1750 it is described as "the goods or chattels of the defendant, and for want of them the lands or person." Revision of 1750, p. 3. In § 893 of the General Statutes of 1888, as "the estate of the defendant, both real and personal, and for want thereof against his body." By § 1155, General Statutes of 1888, an execution runs against the "goods or lands" of the defendant.

It is only by such general language and by the various Acts exempting certain property from execution, that the legislature has declared what property, or what interest in property, may be taken by attachment.

In conformity with the settled policy of this State, that all the property of a debtor should be holden for the payment of the debts of its owner, our courts have construed the language of these statutes as rendering liable to attachment certain legal and equitable interests in property, the absolute or legal title to which property is not in the debtor, but which interest is within his control and can be fairly appraised or sold; as the interest of one partner in the copartnership property, the interest of a *cestui que trust* in real estate, an equitable interest in shares of stock, a mortgagor's equity of redemption, and such other interests in goods or lands, whether legal or equitable, as, with justice to both debtor and creditor may, in the manner provided by statute, be appropriated to the payment of the former's debts. *Punderson* v. *Brown,* 1 Day,

93, 96; *Davenport* v. *Lacon*, 17 Conn. 275; *Johnson* v. *Conn. Bank*, 21 id. 148, 156; *Bunnell* v. *Read*, ibid. 586; *Middletown Savings Bank* v. *Jarvis*, 33 id. 372, 379.

We have, however, never held that an uncertain interest, incapable of just appraisal, and possibly of no value, may be thus sequestered for the creditor's doubtful benefit, and we think we ought not to so hold. When an interest which may be strictly neither goods nor land is nevertheless clearly property, capable of being fairly sold and appraised, which is subject to the debtor's control, and which ought to be responsible for his debts, we say that the policy of the State for two hundred and fifty years clearly indicates that such interest is attachable property within the meaning of the statute. But the same reasoning which has induced our courts to place such a construction upon the language of our statutes, leads us to the conclusion that the defendant's interest in his father's estate is not attachable within the meaning of the law. While it is unjust that one should keep from his creditors property which can be fairly sold or applied to the satisfaction of his debts, it is equally unjust that a creditor should seize and destroy an interest of his debtor which is so uncertain and contingent that it cannot be fairly sold or appraised. The policy of the law justifies the extension of the right of attachment to property which, though not strictly within the letter, is within the equity of the statute. It does not justify such an extension of that right as will be likely to result in the destruction of a paternal gift which can be of no present value to any one, and may never be of value to the debtor or his assignees.

It is the purpose of our law that no estate in land can be taken on execution, unless at its "true value." General Statutes, § 1182. That value is to be ascertained by an estimate made by three disinterested freeholders. If the estate be one less than a fee simple, they must be informed of its nature and extent before they can be in a position to make this estimate, and the estate must also be of such a character that its value can then be determined with reasonable precision.

Harmon Gilbert in his will, undertook to create several es-

tates in the land now in question. Several different views of the results of his dispositions were stated in the argument of the cause, and others perhaps might be suggested. The will has never been judicially construed, and it would be undesirable to determine its precise effect in this proceeding, since all the parties in interest are not before us. It is enough to say, and such is our opinion, that the interest taken by the defendant is not one the true value of which can, under present circumstances, be ascertained by appraisers on execution with reasonable precision.

By the garnishment of the savings banks and the executor, there has been no such attachment of personal property of the defendant as gives jurisdiction to the Superior Court. As at the time of the attachment there was no sum due the defendant from the banks, either as a legacy or otherwise, they were not his debtors, and nothing was therefore secured by the foreign attachment.

By the service of the garnishee process upon the executor, it was not attempted to attach any present interest of the defendant in the money or personal property of the estate. The purpose was to attach a legacy to become due. The statute provides that "from the time of leaving such copy, . . . any legacy, or distributive share due, or that may become due to him [the defendant] from such executor, . . . shall be secured in the hands of such garnishee to pay such judgment as the plaintiff may recover." General Statutes, § 1231. Section 1253 provides that when judgment is rendered for the plaintiff in the action by foreign attachment, any legacy or distributive share at the time of the attachment, "due or to become due to the defendant from any garnishee as an executor," shall be liable for the payment of such judgment.

At the time of the attachment there was no legacy due or to become due the defendant, in the sense in which those words are used in the statute. The process of foreign attachment is unadapted to secure an interest in remainder so remote and uncertain. It contemplates an uninterrupted and continuous possession by the garnishee from the date of the attachment to that of the demand on execution. Under the

will in question a paramount right of possession existed in favor of the holder of the life estate, and it was uncertain whether after her death the enjoyment of the property would pass to the defendant. The executor has no power to hold enough of the personal property and money of the estate to pay this possible legacy, until the happening of the events upon which the legacy depends, and until demand is duly made upon him as garnishee upon execution in the action by foreign attachment. Before that time the Court of Probate may order the money and personal property to be delivered to the widow, upon her giving a proper bond, and upon her failure to give such bond the Court of Probate will appoint a trustee to take charge of such estate during the continuance of the life estate. General Statutes, § 559.

As the defendant's interest in the property in question was not attachable, the court has no jurisdiction.

The Superior Court is advised to render judgment for the defendant.

In this opinion the other judges concurred, except AN-DREWS, C. J., who dissented from so much of it as held that the defendant's interest in the realty could not be attached.