EDWARD COYNE *vs.* FRANK C. PLUME ET ALS.

Third Judicial District, Bridgeport, October Term, 1915.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

A motion to erase for lack of jurisdiction, if well taken, should be granted whenever made.

Control of the person or of the property of a defendant is essential to give the court jurisdiction.

A Connecticut court acquires no jurisdiction of the person of a non-resident defendant who is not served with process within this State, unless he voluntarily appears and submits himself to the authority of the court.

A defendant who answers to the merits after an unsuccessful plea to the jurisdiction, under penalty of being defaulted in case he does not comply with an order of court to that effect, cannot be said to have acted voluntarily, nor to have waived his right to thereafter contest the question of jurisdiction.

A suit by an alleged creditor of a nonresident beneficiary for life in a trust fund in the hands of a local trustee, to secure the appropriation of the accruing income to the payment of his claim, while not strictly *in rem,* is a *quasi in-rem* action; and to acquire jurisdiction it is essential that there should be something equivalent to the judicial seizure of property, such, for instance, as an attachment or garnishment of the property, or the existence of a contract lien against it which is sought to be foreclosed.

Future accruing income cannot be reached by our process of foreign attachment (§ 880), which is confined to debts that are due and which contemplates an uninterrupted possession by the garnishee of the *res* from the time of its attachment to the demand on execution.

Garnishment of a debt due a nonresident defendant is in the nature of a proceeding *in rem,* and the court acts by virtue of its power to compel the garnishee to appropriate the debt to the payment of the execution.

An unrestricted right for life to the income of a trust fund constitutes property which the beneficiary may alienate and which, under our law, may be taken on attachment and execution by his creditors; and by a proper proceeding in equity the income of such a fund may be applied to the payment of the creditor's claim.

General Statutes, §§ 837 and 838, originally enacted in 1889, provide that under certain prescribed conditions the income of a trust fund shall be liable in equity to the creditors of the beneficiary, and

that in an action by any creditor against such beneficiary, "any court having jurisdiction" may direct the trustee to pay over the net income as the same accrues to the creditor until his debt is satisfied. *Held* that in determining whether the court had jurisdiction or not, the rules and principles of law above set forth were applicable; and that inasmuch as in the present case the beneficiary and his assignee were each nonresidents, and no service of process had been made upon them in this State, nor any property belonging to them had been attached or had otherwise come under judicial control, the court had no jurisdiction and the cause should have been dismissed.

Argued October 27th, 1915—decided April 19th, 1916.

SUIT to secure the application of the income accruing on a testamentary trust fund to the payment of debts due the plaintiff from the defendant Plume, the beneficiary of the income, and for other relief incidental thereto, brought to and tried by the Superior Court in New Haven County, *Greene, J.;* facts found and judgment rendered for the plaintiff for $3,149, to be paid from the income of said fund, and appeal by the defendants Plume and Willard. *Error, judgment reversed and cause to be erased.*

*Charles S. Hamilton,* for the appellants (defendants Plume and Willard).

*Ulysses G. Church,* for the appellee (plaintiff).

*Walter E. Monagan,* for the appellee (defendant Colonial Trust Company).

WHEELER, J. We shall not consider the rulings sustaining the demurrer to the plea in abatement filed by Plume and Willard, or that overruling the demurrer to the complaint filed by them, for the chief questions raised by these demurrers are raised by the motion to erase for want of jurisdiction, filed by Plume and Wil-

lard at the conclusion of the evidence, and in the several claims of law made by them upon the argument of the cause and in the judgment rendered. If the court had no jurisdiction, the motion to erase should have been granted.

When Plume and Willard pleaded in abatement to the jurisdiction of the court they appeared specially. When the plaintiff's demurrer to their plea was sustained, they, not waiving their rights, and within the time limited by an order of court, filed a demurrer to the complaint, and, upon its being overruled, answered over and went to trial.

The finding sets forth these facts. On January 1st, 1910, Plume was indebted to the plaintiff by book account and on a note, credit for which had been obtained by the false representations of Plume and Willard, believed in and relied upon by the plaintiff.

Plume's father, by will, gave $35,000 to the defendant Colonial Trust Company, in trust to pay from the income thereof $1,200 a year to his son, the defendant Plume. There was no other provision in the will for Plume, and he had no means of satisfying the plaintiff's claim except through the income from this fund.

Between November 21st, 1907, and March 29th, 1909, Plume gave the plaintiff five assignments of the income of this fund for named months; and both Plume and Willard dissuaded the plaintiff from filing these assignments with the Colonial Trust Company by means of false and fraudulent representations, and relying thereon the plaintiff failed to notify the Trust Company of the assignments. On December 16th, 1907, Plume assigned his interest in this fund to Willard. On December 7th, 1911, Plume made another assignment to Willard of all his interest in this fund. Notice of both assignments was given the Trust Company. Each assignment was without consideration, and was

made to prevent the plaintiff and other creditors from securing their claims from the trust fund.

At the time the plaintiff brought this action, on December 4th, 1912, he garnisheed the Trust Company which then had on hand $1,100 of accrued income from this fund, and Willard then claimed that Plume owed him only $825. This $1,100 was at this time under garnishment in two suits against Plume and Willard, and thereafter judgments were rendered whose payment took all of said $1,100, and the amount of these judgments was more than the amount which Willard claimed Plume owed him.

At the date of judgment herein there was due to the plaintiff from Plume the sum of $3,149.40, and at this time the Trust Company had the sum of $2,500 of income accrued on said fund since the beginning of this action.

On January 13th, 1913, the Trust Company was garnisheed in a suit by Mr. Seymour against Plume, and the Trust Company then had in its hands $1,100 of income from this fund.

Other facts which relate to the fraudulent conduct of Plume and Willard in preventing the collection of the claim of the plaintiff against Plume, need not be specifically referred to.

Plume and Willard were nonresidents and were not personally served with process within the State. They appeared specially and pleaded to the jurisdiction. A demurrer to their plea was sustained. They pleaded over and went to trial. The trial court held that Plume and Willard were subject to a personal judgment since they, by pleading to the merits and going to trial after the demurrer to their plea to the jurisdiction had been sustained, thereby waived their right to contest the jurisdiction.

These defendants were nonresidents; they entered a

special appearance, and they were compelled to plead and go to trial, or suffer a default. They pleaded and went to trial, expressly denying the jurisdiction of the court and refusing to waive any right to contest the jurisdiction.

It would be unjust to make their right of appeal for want of jurisdiction, conditioned upon their submission to a judgment by default, when they had done all they could to protect their rights. The rule differs in different jurisdictions. In some the rule adopted by the trial court prevails; in the great majority it is held that one who after the overruling of his plea to the jurisdiction pleads under protest to the merits, under penalty of default, cannot be said to act voluntarily and does not waive his right to thereafter contest the jurisdiction. And this rule we adopt. *Walling* v. *Beers*, 120 Mass. 548; *Harkness* v. *Hyde*, 98 U. S. 476, 479; *Southern Pacific Co.* v. *Denton*, 146 U. S. 202, 206, 13 Sup. Ct. 44; *Rutherford* v. *Holmes*, 66 N. Y. 368; 1 Corpus Juris, p. 44.

Since Plume and Willard were not served with process within the State, the jurisdiction of our court depends upon its control of their property in such way as to enable the court by its process to appropriate the property to the payment of the amount which might be found to be due the plaintiff. *Smith* v. *Gilbert*, 71 Conn. 149, 153, 41 Atl. 284. An action of that nature is not strictly an *in-rem* action, but rather a *quasi in-rem* action. It is a proceeding whose purpose is to subject the income provided for Plume from this fund to the payment of his debt. The jurisdiction of our court rests in the dominion which it has secured over Plume's property or his property rights. In the strictly *in-rem* action the judicial seizure and possession of the *res* is essential. In the *quasi in-rem* action the equivalent of the judicial seizure will satisfy, as, for example,

by the writ of attachment, or the writ of garnishment, or some contract lien against the property which is sought to be enforced as by way of foreclosure.

All of the property of Plume and Willard with the Colonial Trust Company was in this action sought to be attached under our process of foreign attachment. On December 5th, 1912, when this action was begun, all of the $1,100 of accrued income in the hands of the Trust Company was under attachment, and was paid in satisfaction of executions issued in such actions prior to the date of trial in this cause. When the motion to erase was made at the conclusion of the evidence, there was no income in the hands of the Trust Company which was in the hands of the Trust Company when this action was begun.

Unless our statute of foreign attachment (§ 880) subjects the future-accruing income to its process, it clearly did not give the court jurisdiction over any property held subject to its attachment. The parties do not so claim, nor did the court so hold. Our statute, as interpreted by our decisions, limits the process of foreign attachment to debts due, and contemplates an uninterrupted possession by the garnishee of the *res* from the attachment to the demand on execution. *Sand-Blast File-Sharpening Co.* v. *Parsons*, 54 Conn. 310, 312, 7 Atl. 716; *Smith* v. *Gilbert*, 71 Conn. 149, 156, 41 Atl. 284. The garnishment of the debt due a nonresident is in the nature of a proceeding *in rem*, and the court acts by virtue of its power to compel the garnishee to appropriate the debt to the payment of the execution. *Veeder Mfg. Co.* v. *Marshall-Sanders Co.*, 79 Conn. 15, 17, 63 Atl. 641. There was no income to which the process of foreign attachment applied at the time the motion to erase was made, and there was none at the date of the action, except such as was under attachment and subsequently taken on execu-

tion. The writ does not contain a mandate of attachment, nor was any attachment made in this case except as attempted by the garnishment process which we have just considered.

The case is thus one where no personal service of the nonresidents Plume or Willard was had, and no attachment of their property existed at the date of trial. But the trial court held that General Statutes, §§ 837 and 838, gave the court jurisdiction over the trust fund and its custodian, the Trust Company, and its judgment is in the nature of an *in-rem* judgment addressed to the trustee of the *res* "requiring him to dispose of the *res* as the court finds equity to require." To hold otherwise, the court argues, would defeat the ends of the statute and enable the dishonest debtor to remain outside the State and continue to assign his income and prevent its accumulation and appropriation to the payment of his debts. And this is the important question of the case. The trust created for the benefit of Plume gave him a fixed and definite interest for his life in the increment of the trust fund up to $1,200 a year. The trustee had no discretion over the payment to Plume. Over his interest Plume had complete power of alienation. His life estate could under our law be taken on attachment and execution for the benefit of his creditors. *Ives* v. *Beecher,* 75 Conn. 564, 568, 54 Atl. 207; *Bronson* v. *Thompson,* 77 Conn. 214, 58 Atl. 692; *Middletown Savings Bank* v. *Jarvis,* 33 Conn. 372. By a proper proceeding in equity, the income of this trust fund might have been taken to pay Plume's debt; *Huntington* v. *Jones,* 72 Conn. 45, 43 Atl. 564; and it is true that judgment may be rendered in the very action in which the equitable relief is asked. But in every such case the court must have jurisdiction before it can proceed to judgment.

Within a few days after the decision in *Huntington* v.

*Jones*, chapter 210 of the Public Acts 1899 (p. 1119) was passed, now General Statutes, §§ 837, 838. This statute made the income of this trust fund liable in equity to the claims of all creditors of the beneficiary of the fund. It authorized an action by a creditor against the beneficiary, and empowered any court having jurisdiction, to direct the trustees to pay over the income from such trust estate to such creditor as the same might accrue, until his debt was satisfied. The remedy of the statute, even over the income, is not broader than the equitable remedy enforced in the case we have cited; and that remedy, by the express terms of the statute, is limited to an action brought against a beneficiary in a court having jurisdiction. Unless the court has jurisdiction the action does not lie. So that the difficulty is not in the failure of our law to furnish a remedy by which to appropriate the income or the interest of Plume in this trust fund, but rather in determining whether the court has jurisdiction so that it may apply the income of this fund to the payment of the plaintiff's claim.

Since there was no personal service on Plume and Willard, does the fact of their possession of property within the State give the court jurisdiction *in rem* over it? On a few occasions it has been held that the nonresident's possession of property within the State at the time of judgment is sufficient to give jurisdiction, and that control by the court prior to judgment is unnecessary. This theory makes the jurisdiction of the court rest upon facts ascertained, perhaps, after the judgment, and upon control obtained by the court after the judgment. Its fallacy appears when we look for the foundation of the right of the court to consider the creditor's claim against the nonresident; it is its seizure over the property of the nonresident which gives it the right to inquire into the indebtedness, and *pro*

*tanto* to apply the property to the payment of the debt, or it is the enforcement of a contract lien. The opinion in *Pennoyer* v. *Neff,* 95 U. S. 714, so completely demolished this doctrine that a reference to it and to *Freeman* v. *Alderson,* 119 U. S. 185, 7 Sup. Ct. 165, is all that is necessary. 1 Black on Judgments (2d Ed.) § 230; Works on Courts & Jurisdiction, p. 44; *Cooper* v. *Reynolds,* 77 U. S. (10 Wall.) 308.

The trial court held this was an *in-rem* action, addressed to the trustee, the custodian of the *res,* requiring it to dispose of the *res* as the court finds equity to require. As to the trustee it was not an *in-rem* action or a *quasi in-rem* action, it was a personal action; no property in the hands of the trustee came into the control of the court. The Trust Company is made a party in order that it may be compelled to pay from the accruing income of the trust fund sufficient income to satisfy the plaintiff's claim. The plaintiff's claim against Plume and Willard must be determined in this action. It cannot be determined by treating the action as personal, for no service was made, nor as *in rem,* for no property was held by process of court at the time of trial. The mere fact that the Trust Company was made a party and that it had funds in which Plume, and perhaps Willard, had an interest, did not bring that interest into the control of the court. This could only be done in an action against them by an attachment or other seizure of the fund, since there was no income in existence subject to attachment at the time of trial; and the court must adjudicate, first, the validity of the assignment to Willard, and second, if this is held invalid, the claim against Plume. Bringing the trustee in does not bring the fund into court, or notify Plume and Willard that the fund is in court; and the theory of the law is that the seizure or attachment of the fund is a notification to those having an

interest in it of the pendency of the action, since every one is esteemed to retain dominion over his own property. Only the fund itself can be disposed of, and the rights of claimants to it can be definitely adjudicated so far forth as the fund will pay the claimants.

In *Pennoyer* v. *Neff*, 95 U. S. 714, 720, the plaintiff was a nonresident and asserted title to certain premises, and the defendant claimed title on a sheriff's deed upon sale on execution upon a judgment against the plaintiff, and the property was not attached, nor in any way brought under the jurisdiction of the court, and the court said: "Its first connection with the case was caused by a levy of the execution. It was not, therefore, disposed of pursuant to any adjudication, but only in enforcement of a personal judgment, having no relation to the property, rendered against a nonresident without service of process upon him in the action, or his appearance therein."

Since the motion to erase for want of jurisdiction filed by Plume and Willard should have been granted, there was no basis upon which the judgment against the Trust Company could rest.

There is error, the judgment is reversed and the Superior Court is directed to grant the motion to erase.

In this opinion the other judges concurred, except THAYER, J., who dissented.