## WILLIAM F. GEENTY, ADMR.
*vs.*
## PHOENIX MUTUAL LIFE INSURANCE CO.

Superior Court       New Haven County       File No. 56425

MEMORANDUM FILED JULY 21, 1939.

*Samuel Persky,* of New Haven, for the Plaintiff.

*Gross, Hyde & Williams,* of Hartford, for the Defendant.

O'SULLIVAN, J.   This action is brought by the ancillary administrator on the estate of Mary Pinkerton Carlisle, late of New York, against the defendant insurer upon two life insurance policies payable to her, her executors, administrators or assigns.   Legally, the defendant is liable and this it concedes. But it asks for equitable relief, sought through a cross complaint from which spring the sole controversial issues.

There is no dispute as to the facts.   In 1911, the defendant issued the two policies in question on the life of Jay F. Carlisle, Sr.   Originally, the policies were payable to Mary P. Carlisle, his wife, if living; otherwise, to the executors of the insured. In 1935, pursuant to the written request of Mr. and Mrs. Carlisle, the defendant changed the benficiary clause so as to provide for payment to Mrs. Carlisle or her executors, administrators or assigns.

Mrs. Carlisle died on March 25, 1937.   Shortly thereafter, Mr. Carlisle requested a change of beneficiary by which the policies would be payable to his three sons, Jay, Jr., Allan, and Lewis, their survivors or survivor.   The change was made as desired, although legally the defendant had no right to do so under the terms of the policies.

Mr. Carlisle died on November 17, 1937.   His sons made claim for the amount due, and having furnished proper proof of death, were paid the proceeds amounting to $42,544.71 on November 29th.   In making this payment the defendant acted under the erroneous belief that the sons were rightfully entitled to the proceeds, whereas in fact they were not.

Mrs. Carlisle's estate in the hands of her executor in New York is large but in amount is less than $1,000,000.   There is no question of its solvency and all known claims have either been paid or provided for.

By the terms of her will, Mrs. Carlisle bequeathed $25,000 to each of her three sons.   These legacies were paid during the latter part of 1937.   By further provision, the sons are entitled for life to the net income from the residue of the estate through the medium of a trust.   Furthermore, each has a contingent remainder in the share of his brother dying without issue.

It is strongly urged by the defendant that a grave injustice will ensue unless the judgment, which must be entered, is circumscribed in such a manner as to prevent the funds from being turned over to the domiciliary executor in a foreign jurisdiction. For, it argues, if they are so transferred, they will eventually flow into the trust of which the three sons will enjoy the life use, and as these individuals have already been paid the full amounts due under the policies, they will, in effect, receive double payment, to the detriment and financial loss of the defendant.

Hence, the latter appeals for assistance and through its cross complaint seeks equitable relief suggested in various forms. Its real objective, however, is to convince the court of the imperative need of assistance, and if successful to that extent, then to formulate some acceptable method of impounding within this jurisdiction the proceeds of the judgment and of so handling it that the net income, which otherwise would go to the three sons, may be applied to liquidate the debt which they owe this defendant because of their already having received the fruits of the policies to which they were entitled.

The plight of the defendant, although the result of its own error, appeals most strongly to the equitable side of this court. But that does not, of itself, confer any jurisdiction or authority to rectify the anticipated injustice the situation so eloquently discloses.

The plaintiff is an ancillary administrator and between him and the domiciliary executor no privity exists. *Low vs. Bartlett,* 8 Allen (Mass.) 259, 262; *Brown vs. Fletcher's Estate,* 210 U.S. 82, 52 L. ed. 966. A paraphrase of a quotation from the *Low* case might well run in this fashion. "If we look at the question of privity between the executor in New York and the ancillary administrator in Connecticut, it is difficult to find any valid ground on which such privity can rest. The former derived his authority from the letters testamentary issued by the surrogate court in New York; he gave bond to that court; is accountable to it for all his proceedings; makes his final settlement in it and will be discharged by it, in conformity with the statutes of that state. The ancillary administrator derived his authority from the Probate Court of the District of Hartford, and is accountable to it in the same manner in which the executor is accountable to the New York court. The authority of the executor does not extend to the property of the estate of

Mrs. Carlisle in Connecticut, nor to the doings of the administrator. Nor does the authority of the administrator extend to property of the decedent in New York, or to the doings of the executor. When suit was contemplated, the executor had no right to enter Connecticut to institute it. Or had he come here, he could not have been sued. The courts of Connecticut have no jurisdiction of the executor or of the goods in his hands, any more than the New York courts have over the administrator and any goods in his hands."

By analogous reasoning, there is no privity between the plaintiff administrator on the one hand and either the trustees nominated by Mrs. Carlisle or the three sons, on the other. I deem it important to stress this because, it seems to me, the real core of the problem is a jurisdictional one, and it must not be forgotten that the sole parties to this present litigation are the ancillary administrator and the insurer.

It is further obvious that the defendant has no equities against the estate of Mrs. Carlisle or the plaintiff who represents the estate. Against only the three sons do its equities run and unfortunately they are not only nonresidents but more unfortunate is it that they are not parties to the action.

To surmount the difficulties confronting it, the defendant insists that section 5723 of the General Statutes, Revision of 1930, affords a means appropriate to meet and solve the problem. The pertinent portion of this statute runs: "Whenever property shall have been given to trustees to pay over the income to any person [save in an instance of a spendthrift trust, which is not here involved] such income shall be liable in equity to the claims of all creditors of such beneficiary. Any creditor of such beneficiary may bring an action against him, and any court having jurisdiction may direct such trustees to pay over the net income derived from such trust estate to such creditor, as the same may accrue, until his debt shall be satisfied."

With real regret I am unable to find within this statute the authority to grant the relief sought by the defendant. In the first place, the statute contemplates a situation where a trust already exists from which one is receiving or is eligible to receive the income. But there is no such trust over which this court may exercise control, at least none in the State of Connecticut. The funds derived from this judgment will not create any trust nor will the ancillary administrator, when he receives them, suddenly blossom forth as a trustee. It is true, of course,

that he is a fiduciary and as such is accountable to the estate he represents. But even were he to be labeled a trustee, he is not of that type which the statute contemplates in the following language which warrants repetition: "Whenever property shall have been given to trustees to pay over the income to any person, etc."

But the defendant says, the fund derived from the judgment will, after transmittal to the executor and from him to the trustees, eventually find itself in a trust. Let us assume that, as equity considers done that which ought to be done, the funds in Connecticut are trust funds of a specific trust. The statute gives a creditor the right to bring an action against the beneficiary. But the sons are not parties to this action. Furthermore, the statute directs that any court having jurisdiction may direct the trustees to pay over the net income. But the trustees are not parties to this action nor are they in privity with the plaintiff. Hence, there is a fatal lack of jurisdiction to invoke the power conferred under the statute.

Nor am I able to construe the cross complaint as one in the nature of a creditors' bill which may successfully enforce the payment of a debt out of the property of a debtor, under circumstances which impede or render impossible the collection of a debt by the ordinary process of execution, as, for example, to reach the equitable interests of the three sons in the proceeds of the policies. *Huntington vs. Jones,* 72 Conn. 45. The statute, section 5723, does not, of course, preclude one from seeking other relief, recognized in equity, than that set forth in the statute. *Coyne vs. Plume,* 90 Conn. 293, 300.

But again one is confronted by the fact that the sons are not parties to the action. Nor has the defendant's claim been reduced to judgment. The latter event is not usually necessary in Connecticut because, in the one suit, the creditor may have judgment for his debt and the necessary equitable aid to obtain payment. *Vail vs. Hammond,* 60 Conn. 374. But in the instant case, the alleged creditor has neither judgment nor are its debtors parties to the litigation. In such a situation, the cross complaint cannot be construed as in the nature of a creditors' bill to provide other remedies than those found in the statute.

I have not been impressed with defendant's claim that the sons are entitled to the income which already has accrued to the fund in its hands. If by this it means that the judgment which must be entered carries interest, it does not follow that

this interest is income  On the contrary, it is merely a penalty added to the sum which the defendant should heretofore have paid. *Barnes Co. vs. Zachs,* 117 Conn. 285, 288.

Nor is the defendant on sound ground if it relies on the rule that a life tenant of the residue of an estate is entitled to receive so much of the income accruing after the testator's death and prior to distribution as is found to have accrued upon the portion of the estate distributed to the trustee (*Chase National Bank vs. Schleussner,* 117 Conn. 370, 377; *Stanley vs. Stanley,* 108 id. 100, 108), for this is merely the result of an assumption and an assumption cannot substitute for a *res.* There is no evidence that any income has accrued to any part of this estate, much less that any is within this jurisdiction.

Yet there lies in my mind not the slightest uncertainty as to what I would like to do in order to reach the plane of fairness; the difficulty lies in locating the source of power to do it.

Here we have a fund in this state, which the defendant concedes is owing to the plaintiff. The latter argues that if there is any right which the former has against the three sons, it may enforce that right in New York. A citizen of this state is entitled to no preference over a nonresident, but on the other hand he should not be placed at any disadvantage. I can become quite suspicious of those who, remaining beyond our borders, permit an unjust advantage to be taken over one of our own citizens, by allowing the ancillary administrator of an estate of which they are heirs to obtain in this form a fund to the future benefit of which they have no moral right. For them to sanction, as they probably have done, an action of this nature, suggests that were the defendant to seek redress in New York, it might with reason expect to find itself hampered by the trickery of assignments and the like. I make these observations to indicate the deep extent to which I have been impressed by the equities of the defendant's position, and this impression is made all the more positive because the proof of death relied on by this plaintiff is that which was furnished by the three sons.

An action is pending in Hartford involving certain phases of the events upon which the present action has been brought. Included in the parties defendant are the sons, who, by filing pleas in abatement, have thus far refused to submit to our jurisdiction. I am unaware of the form that action takes, but I have been advised that the plaintiff has been garnisheed in that action. That procedure may or may not be ample protec-

tion for the present. If, however, counsel is of the opinion that a stay of execution on the judgment in this case will more amply guard its rights until the determination of the Hartford action, I will deem it within the broad equity powers of this court to order a stay, in view of the request for such relief as to equity may appertain. This, it seems to me, is well within my power and, if so, furnishes the extent to which I should go.

Judgment may enter for the plaintiff to recover $42,544.71 with interest from November 29, 1937, the date when apparently proof of death was furnished the insurer.