Shaw C. J.
delivered the opinion of the Court. No ques-1 . \ ^on's made of the plaintiff’s right to recover ; but the question turns upon the amount of damages. The defendants, being a deputy sheriff with his assistants, having a writ against the plaintiff, forced the doors of his dwellinghouse and attached his goods. The jury by their verdict distinguish between the damages for breaking and entering the house, and those given for the value of the goods. The defendants contend that though the breaking and entering the plaintiff’s dwellinghouse' was unlawful, yet that the attachment of the goods made by means thereof was valid and lawful, and therefore that the value of the goods ought to be deducted from the damages given by the verdict.
It is remarkable that upon a question of such frequent recurrence in practice, and of so much importance in relation to the service of civil process and the powers and duties of officers therein, no direct judicial authority is to be found. The circumstances to be taken into consideration are, that the goods were in a dwellinghouse, and were attached in consequence of the house being broken open by forcing the outer door, that the direct and avowed purpose of breaking open the house, was to make an attachment, and that this was done against the will and contrary to the express prohibition of the owner. It is clear, from all the authorities, and wholly undisputed as a rule of law, that the act of thus breaking the outer door of a dwellinghouse, is unlawful. The goods were attached in pursuance of a previous design, and through the medium of this unlawful act, and could not have been otherwise attached ; and the question is, whether the attachment was valid, and constituted a legal lien on the goods. Were it not for some very respectable authorities having a different aspect, it would seem from the mere statement of the question, that it must be decided in the negative.
*277 In Bacon’s Abridgment and by other respectable compilers, it is stated, that on a capias, or fieri facias, the sheriff is not authorized to break the door of a dwellinghouse, though the execution would be good. Bac. Abr. Sheriff, N. 3. The authorities on the subject are stated with great clearness and fulness, in a note by Mr. Metcalf, the American editor of Yélverton’s Reports, p. 29.
On a reference to the case in the Year Books, 18 E. 4. /. 4. which is usually cited as the foundation of the supposed rule, we think it is quite manifest, that the real point decided there was, that a sheriff is not justified in breaking a dwelling-house in order to execute a fieri facias, for a fieri facias will not excuse an officer for breaking a dwellinghouse.
Lord Coke, in his report of Semayne’s case, 5 Rep. 93, refers to the same case in the Year Books, and says it was resolved by Littleton and all his companions, “ that the sheriff cannot break the defendant’s house by force of a fieri facias, but he is a trespasser by the breaking, and yet the execution which he then doth in the house is good.” It is obvious from the facts that this point was not raised or decided in Semayne’s case, and it is not mentioned by the other reporters of the same case.
In Lee v. Gansel, Cowp. 1, though the above cases are cited by Lord Mansfield, as they stand, yet he used them for another and distinct purpose, and he expressed no opinion, nor had he in the case' before him occasion to express any, upon the point now under consideration.
„ In Heminway v. Saxton and others, 3 Mass. R. 222, the action was trespass quare clausum against a deputy sheriff and his assistants, alleging that they broke and entered the plaintiff’s dwellinghouse, and took and carried away sundry articles of property, with other wrongs. The defendants justified, under a writ against'the plaintiff and an attachment of the goods made thereon ; but the plaintiff had judgment. No question was made of the validity of the attachment, and it does not appear whether the value of the goods was included in ihe damages ; and it is not therefore a direct authority for any thing more, than that it is unlawful to break a dwellinghouse, in order to make an attachment upon a writ, and that an action of trespass *278 will lie for it, by the owner, whose goods are thus attached, against the officer. But as it is a general rule in trespass, that the plaintiff shall be indemnified for all losses sustained in consequence of the tortious act of the defendant, and as the value of the goods is commonly the most considerable, and often the only item of loss in such cases, it may be presumed, that if a different rule had been adopted in this case, some notice would have been taken of it. If the damages were given according to the usual rule, the case is an authority against the validity of such an attachment.
In Widgery v. Haskell, 5 Mass. R. 155, Parsons C. J. referred to the common position found in the compilers, as it would naturally present itself to his recollection at the moment, as an apt illustration of the argument which he was enforcing. The proposition he was illustrating was this; that the protection of a debtor’s effects from attachment. in his house is not the design of the law, but only an incidental protection, resulting from the provision, that a man’s house is his castle. He then adds, “ and if his effects are found without his castle, they may be attached ; and even in his castle an attachment would be good, although the party might, be punished as a trespasser for invading the castle.” This dictum would be entitled to great weight, had it been the result of examination and reflection ; but we think it very manifest that it was not. The case turned upon the validity of a trust assignment by an insolvent debtor, to an assignee of his own choice, without the act or consent of any of his creditors ; and one argument in support of it was, that in effect a debtor might do the same thing, that is, dispose of his property at his own will without the assent of his creditors, by collecting his effects within his dwellinghouse and paying whom he pleased. It was this argument, which the Chief Justice was answering ; which he did very powerfully, by showing, that although a debtor might do this, it was not because the law deemed it a purpose just and lawful in itself, and one which might be accomplished in other modes, but was necessarily incidental to another and higher principle of the law, designed to afford security to a man and his family, by the protection of his dwellinghouse. It was therefore concluded, that this protection could not be extended :o a conveyance in *279 trust, of goods not within the debtor’s dwellinghouse. That part of the proposition which we are now examining, that the attachment of the property would be good, though the entry of the house was wrongful, was obviously not a point in the case ; and as it is everywhere conceded, that the protection of the dwelling, and not an immunity of goods from attachment on civil process, is the object of the legal maxim, we think it equally clear that this position was not necessary to support the argument which the Chief Justice was maintaining.
From a review of the cases it seems never to have been judicially determined, that an attachment on mesne process or fieri facias, where the possession is obtained by unlawful means, would be valid and effectual to give the sheriff and the creditor a legal right to hold the property. But on the other hand, there are many cases, quite analogous in principle, which seem strongly to support the contrary position.
There are many cases, where arrests on civil process, are held to be unlawful and void in consequence of the unlawful means used to place the party in a situation to be arrested, or where he has been unlawfully detained until he could be lawfully arrested, or other unlawful means used to obtain the custody of his person.
These authorities go directly to support the broad position laid down by Lord Holt, who, after stating that if a man is wrongfully brought into a jurisdiction and there lawfully arrested, he ought to be discharged, adds, “ for no lawful thing, founded upon a wrongful act, can be supported.” Luttin v. Benin, 11 Mod. 50.
A distinction was taken at the bar, between an arrest made by means of breaking a man’s castle, and an attachment of goods . ffected by the same means, upon the ground that the privilege of inviolability given by the law to the dwellinghouse, is designed exclusively for the protection of his person, and that of his family and inmates. If all the cases of discharges of persons arrested, on the ground of the unlawful means used to put the prisoner in a situation to be arrested, had been cases, where the arrest had been accomplished by means of breaking a dwellinghouse, it would have afforded at least a plausible ground for the supposed distinction. But such is not the case; *280 many discharges have been granted upon motion, where by any means the party has been unlawfully detained, in order that a lawful arrest might be made. As where a party was confined without writ, until a writ could be obtained, and then arrested upon it. Barlow v. Hall, 2 Anstr. 462. So where a person was arrested, after the return day, upon a writ functus officio, and held two hours, until the writ could be renewed, it was held that he was entitled to his discharge. Loveridge v. Plaistow, 2 H. Bl. 29. So where one was detained by force without writ, until an officer with a writ could be sent for. Birch v. Prodger, 4 Bos. & Pul. 135. So where one was forcibly detained from Sunday, when no civil process could be lawfully served, till Monday, and then arrested, the arrest was held to be illegal and void. Lyford v. Tyrrel, 1 Anstr. 85. S. P. in a recent case, Wells v. Gurney, 8 Barn. & Cressw 769. So where one is unlawfully arrested, and afterwards and before he can get his discharge, he is arrested upon anothei writ, he is entitled to be discharged from the latter arrest, because made only through the medium of the former unlawful arrest. Ex parte Wilson, 1 Atk. 152. In a modern edition of Bacon’s Abridgement, in the text of which the position is stated as before cited, that though the sheriff would be a trespasser, the execution would be good, the annotator immediately adds, “ But it seems to be the modern practice in some cases, on complaint by affidavit, to discharge such execution and to grant an attachment against the officer.-In Trinity term, 17 Geo. 3, the Court of Exchequer set aside an execution issued under such circumstances, in the case of Yeates v Helamayne.
These cases therefore seem to establish the general principle, that a valid and lawful act cannot be accomplished by any unlawful means ; and whenever such unlawful means are resorted to, the law will interpose and afford some suitable remedy, according to the nature of the case, to restore the party injured by these unlawful means, to his rights.
Probably the reason why so little is found upon this subject in English books is, that according to the practice there, it is much more easy and convenient to apply to the court on motion for summary relief on the ground of an abuse of its *281 process, than to resort to an action. No case there can arise where that remedy does not exist. But if the attachment is in fact invalid, there is no difficulty in affording a remedy by action, either as in the present case, by regarding it as one of the direct consequences of the unlawful entry and breach of the dwellinghouse, and so as an aggravation of that trespass; or as itself the substantive ground of an action of trespass. An officer, having a valid writ, if he does not pursue the authority given him by his writ, and the rules of law in the execution of his duty under it, is a trespasser, in the same manner as if he had no writ; as if he takes goods not belonging to the debtor, or goods exempted by law from attachment, trespass lies. This proceeds on the ground that the writ affords him a definite and limited authority only^ regulated by law; and the legal justification of his acts is coextensive with his legal authority, and he has no protection when acting beyond the scope of that authority. The authority is given upon this restriction and condition, that it shall not be abused or exceeded, or colorably used to effect an unlawful purpose. To accomplish this the rule is well established, that where an authority given by law is exceeded, the party loses the benefit of his justification, and the law holds him, a trespasser ab initio, although to a certain extent he followed the authority given. The law will operate retrospectively to defeat all acts, thus done under color of lawful authority, when exceeded; and a fortiori will it operate prospectively to prevent the acquisition of any lawful right, by the excess and abuse of an authority given for useful and beneficial purposes.
But upon more general grounds, assuming the question to be open for examination, both upon considerations of principle and policy, it appears to the Court, that it would be dangerous to establish the rule, that although a man’s house is his castle, his asylum, and it shall not be forced for the purpose of serving civil process, and upon a balance of the considerations of expediency, the law holds it wise to allow this exemption in favor of the peace and security of families by day and by night, even though the service of civil process is thereby delayed or defeated, yet that a legal right of property may be acquired by the direct violation of this settled and salutary *282 principle of law. Such a decision would afford a direct t.n* couragement to the rash and turbulent creditor, to violate the rules of law and do that which might lead to an open breach of the peace, by giving legal effect to his attachment, if he can procure force enough to make one by unlawful and violent means. It is to be recollected that an officer, whilst acting within the scope of his authority, and in conformity to the rules of law, is not only entitled to the protection of the law, but has power to command the assistance of all other citizens ; and the law extends the like protection to them. But it would be placing such officer and his assistants in a most critical and questionable predicament, if they could be employed in making a lawful attachment by unlawful means. Should the officer refuse to make an attachment under these circumstances, even where the doors are forced by others for the purpose of ena bling him to enter and make the attachment, would he be responsible to the creditor for the non-feasance ? Would citizens be liable to damages, or to punishment, were they to refuse to aid an officer who should undertake to make such attachment ? Should resistance be made from within, and force be repelled by force, would not the assailants be acting unlawfully, would not the owner and inmates of the house be acting lawfully ? Should death ensue, would it not be murder in the assailants ? But it is unnecessary to multiply questions with a view to suggest all the possible ill consequences which must arise, from holding that the act is wrongful, and yet that a valid right can be acquired by means of such wrong act. The consequences must be obvious. If such a transaction can take place in the day time, it may in the night. If the owner of the house may defend by force himself, he may call in the assistance of others. If his house is assailed by force, he may use adequate force to repel it. To such a conflict of rights and powers, we think the establishment of the proposition contended for by the defendants would directly lead. They can only be avoided by either legalizing the attachment and the means of effecting it, by authorizing the officer to break open the doors of a dwellinghouse to serve civil as well as criminal process, and by placing within his reach a sufficient force to enable him to accomplish it, by holding all resistance unlawful, *283 and by thus throwing around the officer and his assistants the broad shield of the law for their protection; or else, by holding that when the means are unlawful, all the declared objects and purposes to be accomplished thereby are alike unlawful, and that no legal right can thereby be acquired, either by the officer himself or by his employers. But as it is a well settled rule of law, established upon considerations of policy, that the doors of a dwellinghouse cannot lawfully be forced for the service of civil process, we think it follows, as a necessary legal consequence, that no valid attachment can be thereby made.[1]

 People v. Hubbard, 24 Wend. 369. But if a person refuses to permit an officer to enter his store for the purpose of attaching the goods of a stranger therein, on a writ in favor of a creditor of such stranger, the officer is justified in breaking open the store for the purpose. Platt v. Brown, 16 Pick. 553. See Newton v. Adams, 4 Vermont R. 437