## CATHERINE GRACE FOURETTE *vs.* THOMAS F. GRIFFIN.

First Judicial District, Hartford, January Term, 1918.
PRENTICE, C. J., RORABACK, WHEELER, BEACH and SHUMWAY, Js.

In a house occupied by two or more tenants, the door opening from the common passageway into the separate apartment of each tenant is the "outer door" of his home, which an officer serving civil process has no right to open and enter against the known will of the occupant.

The fact that the tenant was in the hall or common passageway when she refused to allow the officer to enter her apartment is immaterial, inasmuch as one's dwelling-house is not only for his own personal protection but also for the protection of his property therein while it is used as a residence.

An instruction which authorizes the jury to treat the alleged intentional wrongdoing of the defendant as a mere accident, unless warranted by the evidence, is prima facie misleading and harmful to the plaintiff against whom the verdict is rendered.

Submitted on briefs January 2d—decided March 12th, 1918.

ACTION to recover damages for an alleged trespass and assault, brought to the Superior Court in Middlesex County and tried to the jury before *Tuttle, J.;* verdict and judgment for the defendant, and appeal by the plaintiff. *Error and new trial ordered.*

On the 13th day of March, 1915, a writ of replevin was placed in the defendant's hands for service upon Arthur P. Fourette and in favor of one Edward C. Noxon, for certain articles of household furniture.

Under the direction of this replevin writ, the defendant, in company with an expressman, went to the house where the plaintiff and her family lived and where these articles to be replevined were kept, and the articles were seized, taken and carried away by the defendant. Arthur P. Fourette, the defendant in the replevin suit, was the husband of the plaintiff, but he was not then living with his wife. This house was so constructed as

to afford separate and distinct habitations for four different families. The plaintiff and family occupied all the rooms on the first floor of this building. The outer door of the house and the lower hall was used by all of the different tenants of the house. The door which led from the common hall on the lower floor into the plaintiff's apartment opened into the sitting-room. After the defendant had gained entrance into the common hall, through the main front door, he had some talk with the plaintiff who was then in the hall, and she then refused to allow him to go into her rooms. The door of her apartment was then shut and fastened with a knob. As the defendant turned the knob of the door leading into the sitting-room, the plaintiff called to her brother inside the room to lock the door. He jumped against the door, slammed it together and bolted it. The officer, by the pressure of his shoulder against the door, then broke the bolt, opened the door, and entered the rooms of the plaintiff and her family. In substance these facts were uncontroverted.

The plaintiff complains of the refusal of the court to charge as requested and of several portions of the charge as it was given.

This case involves an inquiry as to the right of an officer to break open a door of a dwelling-house when engaged in the service of civil process. In that part of the charge which dealt with this subject the jury were instructed as follows: "If the common front door was the outer door of the plaintiff's home, of course the claim upon this branch of the case fails, because that door was passed by the defendant without any breaking. In my view of the law it matters little in the present case which of these doors is held to be the outer door of the home; for upon the admitted facts, this plaintiff had no right to undertake to exclude the defendant from the tenement while she and the officer

both remained outside. She knew at this time what the officer wanted and the authority which brought him there. She did not bar herself within her apartment and refuse to permit him to enter. No act of hers was occasioned by any fear of bodily harm or of any injury to her home or property other than the removal of the specified articles therefrom. Under these circumstances she called to her brother to lock the door, and this for the express purpose of preventing the officer from carrying out the mandate of his writ. Hearing the call and knowing its purpose, the officer hastened to prevent its execution. If you find that the locking of the door by the brother and the breaking of it by the defendant were practically simultaneous acts, then the officer is not to blame for the breaking of this door and the principle sought to be invoked by the plaintiff does not apply, unless you find he broke the door intentionally."

*Daniel J. Donahue,* for the appellant (plaintiff).

*Frank D. Haines,* for the appellee (defendant).

RORABACK, J. The court was mistaken in this proposition: "It matters little in the present case which of these doors is held to be the outer door of the home; for upon the admitted facts, this plaintiff had no right to undertake to exclude the defendant from the tenement while she and the officer both remained outside." The rights of the plaintiff and her family as to the door leading into her apartments, and their rights as to the common front door, were materially different, and the jury should have been so informed. The rooms occupied by the plaintiff and family consisted of, and in themselves formed, a separate and complete habitation for the plaintiff and her family. They were

entitled to the use and occupancy of these rooms and the door leading from them into the hall, as if they were a part of a distinct structure. The common outer door of this house served as a passageway for the occupants of these different habitations. All the rights which the plaintiff and her family had in and to this outer door was the right to use it in common with the other tenants. It is a familiar principle of law that where there are different apartments of a house, having a common outer door, the door of the apartment of each separate occupant is his outer door which cannot be broken open to serve civil process. 1 Swift's Digest, 607; *Swain* v. *Mizner*, 74 Mass. (8 Gray) 182, 69 Amer. Dec. 244.

The law is also well settled that if the outer door is shut and latched, although not fastened, an officer has no right to open it and enter without the permission of the owner. The fact that the plaintiff was upon the outside of the door leading from the hall into her apartments, when the door was opened, did not alter her rights if the entry was contrary to her known will and objection. A man's dwelling-house is not only for his own personal protection, but it is also for the protection of his family and his property therein while it is occupied as a residence. 1 Swift's Digest, 606; *Curtis* v. *Hubbard*, 4 Hill (N. Y.) 437, 40 Amer. Dec. 292; *Ilsley* v. *Nichols*, 29 Mass. (12 Pick.) 270, 22 Amer. Dec. 425.

The court below, in that part of its charge already ·quoted, also stated to the jury: "If you find that the locking of the door by the brother and the breaking of it by the defendant were practically simultaneous acts, then the officer is not to blame for the breaking of this door, and the principle sought to be invoked by the plaintiff does not apply, unless you find he broke the door intentionally." The language of these remarks is susceptible to the interpretation that there was evidence

from which the jury might find that the alleged breaking of the door was accidental and not intentional. One serious fault with this instruction is that the record discloses that there is no foundation for the statement that the breaking of the door by the officer was accidental. The most favorable statement of the defendant's contention upon this part of the case is to be found in his own statement of his claims to the jury. It here appears that he offered evidence to prove and claimed to have proven that he "turned the knob of the door leading into the room of the said tenement and having opened the door slightly the plaintiff called to her brother inside of the room to lock the door and he jumped against the door, slamming it together and bolting it against the officer, the pressure of whose shoulder against the door at the same time resulted in breaking the bolt, whereupon the defendant constable entered the room." It is plain that the remarks of the court upon this part of the case were misleading, and that the jury might have been lead to a harmful conclusion thereby.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.