TOWN OF WOODSTOCK *v.* THE RETREAT, INCORPORATED:

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued November 1—decided December 7, 1938.

*Mahlon H. Geissler,* for the appellant-appellee (plaintiff).

*Harry E. Back,* and *Perry W. Gardner* of the Massachusetts and Rhode Island bars, for the appellant-appellee (defendant).

AVERY, J. The plaintiff brought this action to foreclose four tax liens for taxes assessed against the defendant on the lists respectively of October 1, 1930, 1931, 1932, and 1933, upon two pieces of property consisting of a tract of approximately fourteen acres of land with buildings thereon situated on the south side of Senexet Road in Woodstock; also a tract of about thirty-three acres on the opposite side of the road with two buildings thereon. The principal building upon the property was located upon the south tract and was erected by a former owner as a residence. It contains nineteen sleeping rooms, several baths and toilets, a dining room, a kitchen fitted with facilities for cooking for a large number of people, a large living room and a small chapel, which was installed by the present owner upon acquiring the property and dedicated with the same formalities used by the Unitarian denomination in dedicating a church. The taxes were assessed by the officials of the town of Woodstock, and certificates of liens to secure such taxes were filed and re-

corded in the land records of the town. Defendant attacks the assessments only upon the ground that the property is exempt from taxation.

The Retreat, Inc., was originally incorporated under the laws of Massachusetts. Its chartered purpose was stated to be: "To establish, or assist in establishing, a retreat house where ministers and laymen of the Unitarian church, and all other persons who so desire, may go from time to time for spiritual rest and refreshment, and/or to maintain a temporary retreat or retreats for such purposes, and/or in any other way to assist in the establishment, maintenance or carrying on of such a retreat or retreats, to the end that religious life may be increased and deepened among the ministers and laymen of the Unitarian faith and among other liberal Christians." Subsequently, in August, 1932, The Retreat, Inc., was incorporated under the laws of Connecticut. Its purpose was stated to be "to carry on and maintain a retreat house exclusively used as a place of religious worship where ministers and laymen of the Unitarian church and all other persons so desiring may go from time to time for spiritual rest and refreshment, to the end that the religious life may be increased and deepened among ministers and laymen of the Unitarian faith and among other liberal Christians." The legal title to the property was conveyed to the Massachusetts corporation in November, 1929, and has so remained ever since, no conveyance ever having been made by it to the Connecticut corporation. Since the organization of the latter corporation the former has become dormant, and the affairs of The Retreat have been conducted by the Connecticut corporation, which was incorporated for the purpose of bringing the property more closely into compliance with the laws and tax laws of Connecticut, but by an

unintentional oversight no deed was executed to it by the Massachusetts corporation.

The property has been used for retreats for Unitarian ministers, laymen, laywomen and young people; and, when not exclusively for ministers, the retreats have been under the supervision of some Unitarian minister or ministers. Under the rules of the house each group opens the day with religious devotional exercises in the chapel and terminates it with a like service. Between the services discussions are held in the living room upon religious topics and subjects of vital importance to the Unitarian denomination in the conduct of its religious work. Prior to 1932, the property was used by fifty-two persons. In 1933 there were fifteen meetings. Those who attend the retreats are expected to pay a sum representing the actual cost of supplying them with food and something toward the care of the rooms occupied. The income from those who have attended has been much less than the actual cost of operating, the deficits being made up by gifts and loans. Neither corporation has any property outside of the real estate in question nor any endowment. None of the officers of the corporation receive any salaries and the actual supervision of the house is in the hands of the widow of a Unitarian clergyman who gives her services without compensation. The questions involved on this appeal are whether the property is exempt from taxation as a house of religious worship or as a dwelling house held in trust for a religious organization and actually used by its officiating clergyman as provided in General Statutes, § 1163, subdivision 11 and 13, appended in the footnote.[1]

---

[1] (11) Subject to the provisions of § 1165, houses of religious worship, the land on which they stand, their pews, furniture and equipment owned by, or held in trust for the use of, any Connecticut religious organization. . . .

(13) Subject to the provisions of § 1165, dwelling houses and the

"Taxation is an act of sovereignty to be enforced, so far as it conveniently can be, with justice and equality to all. Exemptions, no matter how meritorious, are of grace, and must be strictly construed. They embrace only what is strictly within their terms." *Hartford* v. *Hartford Theological Seminary,* 66 Conn. 475, 482, 34 Atl. 483; *Yale University* v. *New Haven,* 71 Conn. 316, 329, 42 Atl. 87; *Stoughton* v. *Hartford,* 85 Conn. 674, 678, 84 Atl. 95. In *Masonic Building Association* v. *Stamford,* 119 Conn. 53, 60, 61, 174 Atl. 301, in holding that a building used as a Masonic temple was not exempt as a "house of religious worship," we referred to a change in the statute as made in 1929, although in fact it was made in 1927. Public Acts, 1927, Chap. 319. We said that previous to this change, "the only exemption of the property of organizations religious in nature was that of 'churches' and the buildings belonging to and used exclusively for ecclesiastical societies. These provisions evidently referred to buildings devoted to the practice of religious worship as it is customarily carried on in or in connection with the forms of such worship traditional in this State. Such churches ordinarily conduct services of worship open to all that care to attend. . . . The conception that, to be entitled to an exemption, a building devoted to religious uses should be a place of public worship is implicit in the theory of the exemption of such buildings. When in [1927] the word 'churches' was dropped from the statute and 'houses of religious worship' substituted, the legislature probably intended to avoid the suggestion that only those buildings exclusively used for churches, with the significance which that word undoubtedly had in the original provision for tax exemption and with the meaning which historically might

---

land on which they stand owned by, or held in trust for, any religious organization and actually used by its officiating clergymen.

be associated with it, should be exempt; but that it was intended to include the buildings of organizations not having those essential characteristics of churches to which we have referred is in no way indicated." We quoted with approval a statement in *Evangelical Baptist B. & M. Society* v. *Boston*, 204 Mass. 28, 31, 90 N. E. 572: "The purpose of the provision was to exempt from taxation ordinary church edifices, owned and used in the usual way for religious worship."

The purpose of the Massachusetts corporation, the record holder of title to this property, as stated in its charter, makes no mention of owning or maintaining a church edifice or a house of religious worship. Its purpose was stated to be to establish a retreat house. The principal building upon the property of the defendant was such a house with nineteen sleeping rooms, baths, toilets, dining room, kitchen, living room and a small chapel built in one of the rooms where religious services could be held. It is not unusual for devout people of means to have a chapel or room in their house where religious services may be conducted. This fact did not render it a house of religious worship within the meaning of the statute. The exemption under subdivision (11) of the statute was intended to apply to such buildings as are commonly designated as churches. In *Manresa Institute* v. *Norwalk*, 61 Conn. 228, 232, 23 Atl. 1088, in holding that an island containing fifty acres and having upon it a mansion house, two cottages and a chapel devoted to religious uses and equitably owned by a New York corporation, established for the purpose of educating young men for the priesthood, was not exempt as "a building belonging to and used exclusively for ecclesiastical societies," we said, "It seems to be a place of resort for a certain privileged class, in the usual vacation periods, for purposes of rest and recreation. Although the per-

sons resorting there enjoy certain religious privileges and are subjected to certain rules and regulations of an ecclesiastical nature, yet the organizations, the people who control them, and the people who are affected by them, bear very little resemblance to ecclesiastical societies as they exist and are understood in this state and the people connected with them. The latter in the main exist for managing the secular affairs of the churches. The former seem to have for their object the spiritual welfare of their members and others who may be brought within their influence. The two classes are hardly to be compared with each other. The property in question is used rather for the temporal wants of the members of the Society of Jesus, than for instructing and educating young men for the priesthood. It resembles club houses in that it is designed chiefly for the recreation of its members. Therefore we say that the property is not used exclusively for the purposes contemplated by the statute."

"The word 'dwelling house' does not always have the same sense in all cases. It may mean one thing under an indictment for burglary or arson, and another under a homestead law, and another under a pauper law, and another under a contract or a devise." *Robbins* v. *Bangor Ry. & E. Co.*, 100 Me. 496, 501, 1 L. R. A. (N. S.) 963, 968; 19 C. J. 843. In *Rex* v. *Humphry*, 1 Root 63, it was held that a burglary might be committed on the cabin of a vessel. In *State* v. *O'Brien*, 2 Root 516, a schoolhouse was held to be the dwelling house of the school for the purposes of education and its burning arson. In *Fourette* v. *Griffin*, 92 Conn. 388, 391, 103 Atl. 123, it was held that when there are different apartments of a house having a common outer door, the door of each separate apartment is its outer door which cannot be broken open to serve civil

process. In Webster's New International Dictionary (2d Ed.) p. 803, a dwelling house is defined as "A house, or sometimes part of a house, occupied as a residence, in distinction from a store, office, or other building." As employed in General Statutes, § 1163, subdivision 13, the phrase, "dwelling houses and the land on which they stand" is further limited by the provision of the section that they must be owned by or held in trust for a religious organization and actually used by its officiating clergymen. To come within the purview of the statute the house must be actually used by the officiating clergyman of a religious organization as his residence, such as a parsonage or rectory. As far as appears in the finding the property of the defendant was used by clergymen and laymen of the Unitarian faith, and others who might so desire, as a place of temporary sojourn for the purposes of spiritual rest and refreshment. The defendant's property does not fall within the exemption of this subdivision.

The conclusions we have reached make it unnecessary to consider whether the fact that the legal title of the property was not transferred to a Connecticut corporation would affect the defendant's rights to the exemption claimed, for, had it been so transferred, the property still would not be entitled to exemption.

It is unnecessary to consider whether the room in the premises used as a chapel is entitled to partial exemption under General Statutes, § 1165. This question was interpolated into the case by the plaintiff in its brief. It was not raised in or considered by the trial court. *Pyskoty* v. *Sobusiak,* 109 Conn. 593, 598, 145 Atl. 58; *Seigel* v. *Heimovitch,* 121 Conn. 207, 213, 183 Atl. 741.

There is error on the plaintiff's appeal and the cause is remanded to the Superior Court with direction to

enter judgment for the plaintiff for the foreclosure of all the tax liens alleged in the complaint. There is no error upon the defendant's appeal.

In this opinion the other judges concurred.