THE NEPTUNE PARK ASSOCIATION ET AL. v.
BEATRICE STEINBERG ET AL.

SUPERIOR COURT      NEW LONDON COUNTY      FILE NO. 19012

Memorandum filed February 15, 1950.

*Morgan K. McGuire,* of New London, for the Plaintiffs.

*Morris Lubchansky,* of New London, and *Ribicoff & Ribicoff,* of Hartford, for the Defendants.

COMLEY, J. This complaint is in three counts. In their brief the plaintiffs state that they do not press the third count and it is, therefore, not considered in this decision.

In their first count, the plaintiffs rely upon a restriction, which is admittedly binding upon the defendants, against the erection of "any building or structure other than a dwelling house. . . ." The plaintiffs contend that this restriction is to be construed as a prohibition against the use of any building in the development for the occupancy of more than a single-family unit. Certainly this is not the literal meaning of the language used in the deed. That language refers to the character of the structure rather than to the character of the use made of it. But, even though the wording of the restriction might be expanded to include a use for other than "dwelling" purposes and thus to forbid the conduct of a boarding house or lodging house upon the premises, there is no evidence that they are being used in that manner. The four defendants are sisters and, in the summer or in certain parts of the summer, they and their

families live together in the house. There is no business of any kind transacted in it. The mere fact that a number of people, not comprising a single-family unit, may reside in it does not change its character as a "dwelling." Webster defines a dwelling house as a "house, or sometimes part of a house, occupied as a residence, in distinction from a store, office or other building." Webster's New International Dictionary (2d Ed). See *Woodstock* v. *The Retreat, Inc.,* 125 Conn. 52, 59. The core of the plaintiffs' argument is that the restriction should be so strictly construed against the owner, in the light of the kind of residential development which the creators of the restriction had in mind, that the word "dwelling" should be interpreted to mean "single-family dwelling." This runs contrary to the established principle that restrictive covenants will not be extended by implication and that their language will be construed against rather than in favor of the covenant. *Hooker* v. *Alexander,* 129 Conn. 433, 436; *Hickson* v. *Noroton Manor, Inc.,* 118 Conn. 180, 189. The issues under the first count are, therefore, found in favor of the defendants.

In their second count, the plaintiffs claim that the defendants are violating a provision of the zoning ordinance which limits the use of their property to a one-family detached dwelling. That ordinance further provides that a family shall be deemed to be "any number of individuals living and cooking together as a single housekeeping unit." So far as this definition of "family" is concerned it is clear that the defendants come within it. The four sisters and their husbands and children live and cook together as a single housekeeping unit. They do not occupy separate quarters within the house and the lodging facilities, the cooking facilities and the eating facilities are common to all. It is undoubtedly true, as the plaintiffs contend, that they are not members of one immediate family with a single parental head. And for some purposes, as the plaintiffs also point out, the word "family" has been given this narrower meaning as, for example, in workmen's compensation cases (*Northrop* v. *Merritt-Chapman & Scott Corporation,* 106 Conn. 233, 235, and *Piccini* v. *Conn. Light & Power Co.,* 93 Conn. 423, 425), or in cases involving the word as used in wills (*Hall* v. *Meriden Trust & Safe Deposit Co.,* 103 Conn. 226, 236). To adopt this narrow meaning in zoning matters would involve dangerous, if not absurd, implications. It might restrict the use of dwellings in single-family zones to a father or mother and their children or, at least, to a family unit where there is one head in authority.

This would mean that brothers or sisters could not live to-gether. In any community zoned for single-family use, there must be an almost countless variety of households that could not be fitted into the narrower definition of an "immediate family." To hold that such households violate zoning would be extremely dangerous. It seems to me that the test must rest upon how the group lives and not the degree of relationship.

In this case there is no evidence that these defendants are not living as a single group making equal use of common facilities. There is no suggestion that any business activity is involved. There is no suggestion that the house has been subdivided into separate living quarters. For the purpose of maintaing a summer house, these four sisters have combined their several family groups into one single group. That this combination results in a formidable number of people congregated under one roof does not, in itself, contravene the zoning ordinance. That, of course, is what has aroused the opposition of these plaintiffs. But I cannot see that any legal significance can be attached to mere numbers or to the resulting noise and commotion. That would lead to serious complications. No one would maintain, for example, that if two elderly sisters lived quietly together as a single housekeeping unit, they were violating this restriction. Yet there is no essential difference between that situation and the one at bar.

Judgment is, therefore, rendered for the defendants and the temporary injunction is dissolved.