[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The issues before the court arise from a default paternity judgment entered by the court, Colella, F.S.M., on July 3, 2001. The defendant filed a pro se motion to open the judgment and an appearance on July 23, 2001. Subsequently, counsel appeared for the defendant and filed a second, more articulate motion to open dated October 29, 2001. The State of Connecticut, which brought the original petition, opposes the motions. Attorney Virginia Street was appointed as guardian ad litem for the minor child and fully participated in the proceedings.
The State of Connecticut commenced the paternity petition pursuant to its authority under General Statutes § 46b-162. The petition alleges that the plaintiff mother, Christie Mackey, gave birth to a child, Debran Moore, on June 20, 1999. A State Marshal left a true and attested copy of the petition and summons at 78 Imperial Drive in the Town of Manchester, which the marshal asserted was the defendant's usual place of abode.
The petition came to the court on July 3, 2001. The plaintiff mother was present, filed an appearance and testified. The defendant did not appear. The file contains a military affidavit completed by the plaintiff and an unsigned "postal verification", which is a form issued by the Department of Social Services, which requested verification of the following stated address for the defendant: "78 Imperial Dr. Apt B Manchester, Ct. 06040". An unknown hand checked off the box marked "mail is delivered to address given" and the form is postmarked by the Postal Service in Manchester. The month of the postmark is not legible but the year 2001 is clearly indicated.
The court accepted the marshal's return and the "postal verification" and found that there was valid service[1]. There was no other inquiry as to the validity of the mesne service. The court held an immediate hearing, found the defendant to be Debran's father[2], ordered $94.00 for child support $19.00 per week on the arrearages, and found arrears support owing to both the plaintiff and the State of Connecticut.
The State thereafter twice attempted to serve notice of the default judgment on the defendant as provided by statute[3]. Both attempts were unsuccessful. There is no evidence that the required notice form was ever served on the defendant. CT Page 4655
 I
The Attorney General opposes the motion. There is no doubt that the State of Connecticut has an interest which would be prejudiced by opening the judgment. There is the direct out-of-pocket cost of any past or future public assistance paid on behalf of Debran. if the judgment is opened and the defendant is found not to be Debran's father, the State will be required to refund any money it collected through the support order. General Statutes § 46b-171 (b). if subsequent proceedings prove the defendant to not be the child's father, it may be difficult to locate the true biological father placing at risk whether a subsequent support order can be established. In addition to its own direct fiscal interest the State has a public policy interest in ensuring proper financial support for minor children.
The main thrust of the defendant's motion is to obtain a court order for a paternity test. The plaintiff mother does not oppose this. General Statutes § 46b-168 provides for court ordered DNA testing when "the question of paternity is at issue"[4]. However, our Appellate Court has held that where a paternity judgment exists the court lacks the authority to order genetic tests unless the judgment is first opened. Cardona v.Negron, 53 Conn. App. 152, 157, 728 A.2d 1150 (1999); Anderson v.Bailey, 15 S.M.D. ___ (Burt, F.S.M., Feb. 14, 2001). Thus the court can entertain a motion for genetic tests only if it grants the motion to open the judgment.
 II
There is no specific statute relating to opening of an adjudicated paternity judgment McNealy v. Dancy, 13 S.M.D. 107, 118,1999 Ct. Sup. 12793
(1999). A movant must rely on provisions for opening any civil judgment. "These provisions allow a four month window from the date of judgment within which such a motion may be brought." In re Jonathan M.,255 Conn. 208, 237, 764 A.2d 739 (2001); Drakeford v. Ward, 15 S.M.D. ___ (Lifshitz, F.S.M., Nov. 7, 2001).
At the commencement of the hearing the State orally raised the claim that the defendant's motions were not timely and that the court lacks subject matter jurisdiction to grant the motions. "[O]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented. . . . and the court must fully resolve it before proceeding further with the case." CommunityCollaborative of Bridgeport Inc. v. Ganim, 241 Conn. 546, 552, 698 A.2d 245
(1997); Golden Hill Paugussett Tribe of Indians v. Southbury,231 Conn. 563, 570, 651 A.2d 1246 (1995); Pantlin Chananie DevelopmentCorp. v. Hartford Cement Building Supply Co., 188 Conn. 253, 258, CT Page 4656449 A.2d 162 (1982); Haigh v. Haigh, 50 Conn. App. 456, 460, 717 A.2d 837
(1998); see also Practice Book § 25-14.
The paternity judgment was passed on a default in that the defendant did not appear and defend. Accordingly, the motion to reopen is governed by General Statutes § 52-212 and Practice Book § 17-43 which provide a four month time period during which the judgment may be set aside[5]. "The trial court lacks jurisdiction to entertain a motion to open the judgment filed outside that four month period." Bufferd v. Yost,51 Conn. App. 1, 3, 719 A.2d 487 (1998); Ziruk v. Bedard,45 Conn. App. 137, 139, 695 A.2d 4, cert. denied, 243 Conn. 905,701 A.2d 339 (1997); Serrano v. Behar, 15 Conn. App. 308, 311, 544 A.2d 250
(1988)[6].
It is the State's theory that because the defendant's motion relies on insufficient service which implicates in personam jurisdiction, and since Practice Book § 10-31 provides that a motion to dismiss "shall be used to assert . . . (2) lack of jurisdiction over the person" and since Practice Book § 10-30 requires that a motion to dismiss be filed within thirty days of the filing of a general appearance, and since the claim of insufficient service was not articulated until the second, more comprehensive motion to open, that the thirty day limitation bars the court from opening the judgment. This court does not find this convoluted theory persuasive.
The defendant filed his first pro se motion to open just twenty days after the entry of judgment. This was not only well within the four month window provided in the rule, but even within the thirty day window urged by the State. Apparently the defendant's subsequently retained attorney thought it necessary to make the motion more specific. It is unclear, why he chose to characterize the pleading as a separate motion to open, as opposed to filing the same pleading as an amended motion or substitute motion. The court holds that to fail to read these motions together would elevate form over substance[7].
"If a court has never acquired jurisdiction over a defendant or the subject matter . . . any judgment ultimately entered is void and subject to vacation or collateral attack." Bartels v. International CommoditiesCorp., 435 F. Sup. 865, 867 (D.Conn., 1977). Broaca v. Broaca,181 Conn. 463, 468, 435 A.2d 1016 (1980). See also Centerbank v. Mauri,18 Conn.L.Rptr. 406 (DiPentima, J., 1997); Shelto v. TZ, Inc., superior court judicial district of Hanford, doc. no. CV96-0556211 (Freed, J., July 28, 1998) 1998 Ct. Sup. 9604, 9606; Federal National Mortgage Assn.v. Osterberg, superior court judicial district of Fairfield at Bridgeport doc. no. 334312 (Ballen, J., February 8, 1999). Thus even had the motion to open been filed after the four month window, where based on failure of CT Page 4657 service, the court can grant the motion. "Although §§ 52-212 and 52-212a
normally limit the authority to open judgments to a four month period, these statutes do not preclude the opening of a default judgment that is rendered without jurisdiction over a defendant . . . As a matter of law, in the absence of jurisdiction over the parties, a judgment `is void ab initio and is subject to both direct and collateral attack.' Broaca v.Broaca, 181 Conn. 463, 467, 435 A.2d 1016 (1980); Trichilo v. Trichilo,190 Conn. 774, 777-78, 462 A.2d 1048 (1983)." Wilkinson v. BoatsUnlimited, Inc., 236 Conn. 78, 83-84, 670 A.2d 1296 (1996).
Practice Book § 10-30 precludes the filing of a motion to dismiss more than thirty days after the filing of a general appearance. Here, the motion seeks the opening of the judgment not the dismissal of the case. The four month rule of Practice Book § 17-43 governs this motion. Even if it could be concluded that the defendant's failure to file a motion to dismiss waives his ability to claim lack of personal jurisdiction as a basis to open the judgment the defendant also claims lack of notice. The defendant alleges he had no notice of the hearing date, which, if proven, can be found to be good cause to open the judgment. Furthermore, the record clearly establishes that notice of the default judgment was not served on the defendant. The period allowed to move to open the judgment is triggered by proper notice of the default judgment. Lyman v. Lodrini, 63 Conn. App. 739, 745, 780 A.2d 932 (2001).Handy v. Minwax Company, Inc., 46 Conn. App. 54, 57, 698 A.2d 339
(1997).
The court finds that it has jurisdiction over the motion to open the judgment. "Where a court has the power to open a judgment its action represents the exercise of discretion." Cichy v. Kostyk, 143 Conn. 688,697, 125 A.2d 483 (1956); Town of Monroe v. Renz, 46 Conn. App. 5, 13,698 A.2d 328 (1997).
 III
The State Marshal's return of service avers that the petition, order and summons were left at the usual place of abode of the defendant at 78 Imperial Drive in Manchester. The defendant claims that he has resided in the State of North Carolina since 1999 and that he never resided at 78 Imperial Drive in Manchester. He learned of this case only by chance while attending court on a paternity case with another woman.
The defendant's grandmother, Erline Shoffner testified that the defendant has resided with her in Greensboro, North Carolina for about two years. She concedes that both she and the defendant often visit family in Connecticut but denies that the defendant maintains any abode in Connecticut CT Page 4658
Edwin Lopez, the site manager of Squire Village Apartments also testified for the defendant. Squire Village includes 78 Imperial Drive, which the witness described as a building with eight individually numbered units. He testified that he has knowledge of all reported tenants in the building. At the time of the alleged service, the tenant at Apartment B, 78 Imperial Drive was Anita Crawford. He claimed that Dana Moore did not live at that location.
The plaintiff denied knowledge of where the defendant lived at the time the action was commenced. She also denied having provided the Imperial Drive address to the State. She admitted that after the baby was born, the defendant told her he lived in North Carolina.
It is noted that although the postal verification showed mail delivered to the defendant at apartment B, the marshal's return merely indicates 78 Imperial Drive without an apartment number. The attorney general, in fact cross-examined the site manager regarding apartment A1 because "I have that that's where Mr. Moore had resided." The witness noted that there is no apartment A1 although there is an apartment A. He denied that the defendant lived there either.
The failure of the marshal to note the specific apartment number is at least a circumstantial defect and might well be considered a substantive defect. Clover v. Urban, 108 Conn. 13, 16, 142 A. 389 (1928); Fourettev. Griffin, 92 Conn. 388, 390-91, 103 A. 123 (1918); Rodney v. Rodney,29 Conn. Sup. 92, 272 A.2d 315 (1970); National Industrial Bank ofConnecticut v. Juzwic, Superior Court judicial district of New London at Norwich, doc. no. 094048 (Feb. 22, 1991, Axelrod, J.); but see HartfordNational Bank Trust Co. v. Tucker, 178 Conn. 472, 423 A.2d 141 (1979) (lack of apartment number held circumstantial because process was in fact left at the correct apartment was actually received by the defendant and the error corrected by subsequent amendment); Burger v. Frolick, 4 Conn. Cir.Ct. 468 (1967). Service would only be valid if it were proven that the officer made service at the correct house. Rodney v. Rodney, supra, 29 Conn. Sup. 93; Town of East Lyme v. Huntington,22 Conn. Sup. 288, 169 A.2d 752 (1961); National Industrial Bank ofConnecticut v. Juzwic, Superior Court Judicial District of New London at Norwich, doc. no. 94048, (Feb. 22, 1991, Axelrod, J.); Jerjies v.Jerjies, 13 S.M.D. 209, 217, 1999 Ct. Sup. 16549 (1999); Gregory v.Walton, 10 S.M.D. 1, 3 (1996).
Service of a writ of summons "shall be made by the officer reading it and the complaint accompanying it in the hearing of the defendant or by leaving an attested copy thereof with him or at his usual place ofabode." (emphasis added) General Statutes § 52-54. "Fundamental CT Page 4659 tenets of due process require that all persons directly concerned in the result of an adjudication be given reasonable notice and the opportunity to present their claims or defenses." Weil v. Miller, 185 Conn. 495,441 A.2d 142 (1981); Kron v. Thelen, 178 Conn. 189, 193, 423 A.2d 857
(1979); see also Cugno v. Kaelin, 138 Conn. 341, 343, 84 A.2d 576
(1951); Hanson v. Denckla, 357 U.S. 235, 245, 78 S.Ct. 1228,2 L.Ed.2d 1283
(1958); Mullane v. Central Hanover Bank Trust Co., 339 U.S. 306,314, 70 S.Ct 652, 94 L.Ed. 865 (1950); Roundhouse ConstructionCorporation v. Telesco Masons Supplies Co., 168 Conn. 371, 385,362 A.2d 778, vacated, 423 U.S. 809, 96 S.Ct 20, 46 L.Ed.2d 29 (1975), on remand, 170 Conn. 155, 365 A.2d 393, cert. denied, 429 U.S. 889,97 S.Ct. 246,50 L.Ed.2d 172 (1976); City Trust Co. v. Bulkley, 151 Conn. 598,601, 201 A.2d 196 (1964); Proctor v. Sachner, 143 Conn. 9, 17, 118 A.2d 621
(1955).
Originally under common law the defendant's physical appearance in the court was required before a judgment would enter. 1 Stephenson, Connecticut Civil Procedure (2d Ed.) § 16b, p. 54. "Emphasis has shifted to "service of process' in such a manner and under such circumstances as "to make it reasonable and just according to our traditional conception of fair play and substantial justice' that the court should proceed to judgment against the defendant." Stephenson, supra, § 16b; International Shoe Co. v. Washington, 326 U.S. 310,320, 66 S.Ct 154, 90 L.Ed. 95 (1945). "Proper service of process gives a court power to render a judgment which will satisfy `due process' under the 14th amendment of the federal constitution and equivalent provisions of the Connecticut constitution and which will be entitled to recognition under the `full faith and credit' clause of the federal constitution." Stephenson, supra, § 16b; Goodrich, Conflict of Laws (4th ed., 1964), § 67.
Proper service of process is a prerequisite to a court's exercise of in personam jurisdiction over a party. Tarnopol v. Connecticut SittingCouncil, 212 Conn. 157, 166, 561 A.2d 931 (1989); Board of Education ofWallingford v. Local 1282, 31 Conn. App. 629, 632, 626 A.2d 1314 (1993);General Motors Acceptance Corporation v. Pumphrey, 13 Conn. App. 223,227, 535 A.2d 396 (1988); Cohen v. Bayne, 28 Conn. Sup. 233, 237-8,257 A.2d 38 (1969); Dumont Pleadings and Pretrial Practice, 1995 ed., 33.
"Whether a particular place is the usual place of abode of a defendant is a question of fact. Although the sheriff's return is prima facie evidence of the facts stated therein, it may be contradicted and facts may be introduced to show otherwise." Collins v. Scholz, 34 Conn. Sup. 501,502, 373 A.2d 200 (1976); Jenkins v. Bishop Apartments, Inc.,144 Conn. 389, 390, 132 A.2d 573 (1957); Cugno v. Kaelin, 138 Conn. 341, CT Page 4660 343, 84 A.2d 576 (1951); see also Clover v. Urban, 108 Conn. 13, 17,142 A. 389 (1928); Coyne v. Plume, 90 Conn. 293, 297, 97 A. 337 (1916);Palmer v. Thayer, 28 Conn. 237, 242 (1859); Grant v. Dalliber,11 Conn. 234, 238 (1836); Tucker v. Neighborhood Legal Services, Inc.,4 Conn. App. 209, 493 A.2d 278 (1985); Uyen Phan v. Delgado,41 Conn. Sup. 367, 370, 576 A.2d 603 (1990); Plonski v. Halloran,36 Conn. Sup. 335, 336, 420 A.2d 117 (1980); Genung's, Inc. v. Rice,33 Conn. Sup. 554, 558, 362 A.2d 540 (1976); Gillanders v. Dow CorningCorp., Superior Court judicial district of Waterbury, doc. no. BIK-CV93-0304876 (Feb. 9, 1995, Vertefeuille, J.); Shemitz v. Simmons, Superior Court judicial district of New Haven at New Haven, doc. no. CV93-0352991 (Feb. 17, 1994, Hodgson, J.); Udolf v. Swerdloff, 8 CSCR 540
(1993); 1 Stephenson, Connecticut Civil Procedure (2d Ed.) § 22a; Joy, Connecticut Civil Officer (19th ed., 1948), 253.
Our law recognizes that a person may have more than one residence. Abode service may be validly made at any usual place of abode, and is not restricted to one particular abode. "One may have two or more places of residence within a State, or in two or more States, and each may be a "usual place of abode.' Service of process will be valid if made in either of the usual places of abode." Clegg v. Bishop, 105 Conn. 564,570, 136 A. 102 (1927); Dorus v. Lyon, 92 Conn. 55, 101 A. 490 (1917).
"The habitation of a person is his abode." Capitol Light Supply Co.v. Gunning Electric Co., 24 Conn. Sup. 324, 326, 190 A.2d 495 (1963);Cugno v. Kaelin, 138 Conn. 341, 343, 84 A.2d 576 (1951). "The usual place of abode is usually considered to be the place where a person is living at the particular time when service is made." Grant v. Dalliber,11 Conn. 234, 238 (1836); Collins v. Scholz, supra, 34 Conn. Sup. 503;Cohen v. Bayne, 28 Conn. Sup. 233, 238, 257 A.2d 38 (1969); Murach v. Laing, 8 Conn.L.Rptr. 393 (1993); Deane v. Daley, 8 S.M.D. 67, 68,9 CSCR 1005 (1994);Pracukowski v. Waldron, 9 S.M.D. 61, 65 (1995); Focus Realtyv. Hampford, Superior Court judicial district of Fairfield at Bridgeport doc. no. CV92-0298057 (Sept 28, 1994, Maiocco, J.); Miller v. Field,9 CSCR 494 (1994); Union Trust Co. v. Gotthilf, Superior Court judicial district of Stamford/Norwalk, doc. no. CV89-0105126 (Feb. 4, 1994,Lewis, J.).
The State places some significance on the fact that the defendant carries an expired Connecticut motor vehicle operator's license listing a Hartford address. Transcript 12/20/2001, pp. 24-26. The court places little weight on this fact. The license expired in 2000 which is entirely consistent with his claim that he now lives in North Carolina. Moreover, the address on the license is 71 Barbour Street in Hartford, which the defendant claims is the residence of his aunt. There is no connection to the Manchester address. Furthermore, courts have rejected any attempts to CT Page 4661 link validity of service to the address notification requirements in General Statutes § 14-45[8]. Nevins v. Moretti, 4 Conn.L.Rptr. 244
(Teller, J., 1991) (The purpose of the statute is to identify drivers and facilitate communications with them not to provide an alternative method for service of civil process.); State v. Baltromitis, 5 Conn. Cir.Ct 72, 78 (1967); Piorkowski v. Federal Express Corp., Superior Court judicial district of New Haven, doc. no. 405352 (Levin, J., Feb. 6, 1998);Shircliff v. Mazzaro, 16 Conn.L.Rptr. 630, 1996 Ct. Sup. 4255-D
(Pellegrino, J., 1996); Jerjies v. Jerjies, supra, 13 S.M.D. 219-20.
The court finds more noteworthy three other paternity and support cases involving other children of the defendant. The court takes judicial notice of the following files: Tychell Knowlin v. Dana Moore, Superior Court judicial district of Hartford, doc. no. FA98-0627219; Oleka Belfreyv. Dana Moore, Superior Court judicial district of Hartford, doc. no. FA98-0627367; Latasha Ruth v. Dana Moore, Superior Court judicial district of Hartford, doc. no. FA97-0622408. Significantly, the paternity petition in Belfrey was served abode at 78 Imperial Drive, Apartment B, Manchester on December 10, 1998. Moreover, the support petition inKnowlin was served at the same address on June 18, 1999. Clearly Mr. Moore has more of a connection to that address than he has disclosed[9].
However, nothing in the three files can be construed as an admission that the defendant resided at the Manchester address even three years ago, much less in 2001 when the purported service was made. Mr. Moore filed an appearance in Belfrey, recording his address as 132 Andover Street in Hartford. In Ruth, process was served at 32 Baltimore Street in Hartford and the defendant filed an appearance at the same address. InKnowlin, the defendant signed an acknowledgment of paternity listing 71 Barbour Street in Hartford as his address. Curiously, the support petition alleges the Barbour Street address even though the officer serving the petition was apparently sent to Imperial Drive. The defendant filed an appearance in that case in 2001 stating his address as 319 Lawrence Street, Greensboro, North Carolina.
The court concludes that the defendant's disclaimer of any connection to 78 Imperial Drive is not credible. It is also clear that the defendant spends substantially more time in Connecticut than he is willing to admit. These two facts do not add up to establishing an abode in Manchester in 2001. The court finds that while apparently the defendant circulated among various Connecticut addresses and women, by 2000 he resided in North Carolina and has since remained a resident there. Accordingly, the process left at Imperial Drive in Manchester established neither jurisdiction nor notice of the action.
 IV CT Page 4662
The plaintiff, Christie Mackey, appeared pro se at the evidential hearing. She continues to believe that Dana Moore is Debran's father. However, she believes that it is in her daughter's best interests that she know her true biological father. Therefore, she does not oppose opening the judgment so that DNA tests can be conducted.
 V
Connecticut has long recognized that children have a separate and independent interest in family relations matters. In re Bruce R.,234 Conn. 194, 209-210, 662 A.2d 107 (1995); Nye v. Marcus, 198 Conn. 138,502 A.2d 869 (1985); Guille v. Guille, 196 Conn. 260, 492 A.2d 175
(1985); Salvio v. Salvio, 186 Conn. 311, 441 A.2d 190 (1982); Yontef v.Yontef, 185 Conn. 275, 440 A.2d 899 (1981). "It can no longer be disputed that the minor child . . . has a separate and distinct interest in the outcome of this motion." Pullen v. Cox, 9 S.M.D. 134, 145 (1995).
Financial support is linked to the best interests of a minor child. "Connecticut child support enforcement legislation clearly evinces a strong state policy of ensuring that minor children receive the support to which they are entitled." In re Bruce R., 234 Conn. 194, 209,662 A.2d 107 (1995). Support is one of the "best interest" considerations the court must consider. Id., 210-12; In Interest of K. J. K.,396 N.W.2d 370, 371-72 (Iowa App. 1986); In Interest of A. B.,151 Wis.2d 312, 322, 444 N.W.2d 415 (Wis.App. 1989). Our Supreme Court has held that minor children even may appeal an order regarding their own support in the absence of a guardian ad litem, if the trial court finds that it is in their best interests to do so. Newman v. Newman,235 Conn. 82, 663 A.2d 980 (1995).
The right of the child to knowledge of his parentage is among the factors to be weighed in opening a judgment. Johnson v. Domina, Superior Court Judicial District of Hartford, doc. No. FA88-0340848,1998 Ct. Sup. 11005
(Dranginis, J., Sep. 24, 1998); Andrews-White v. Mitchell,15 Conn.L.Rptr. 629, 1995 Ct. Sup. 12880 (McWeeny, J. Nov. 13, 1995);Lillibridge v. Lillibridge, Superior Court Judicial District of Hartford, doc. No. FA89-0356816 (Dranginis, J., October 21, 1998)[10];Colangelo v. Hunter, 15 S.M.D. ___ 2001 Ct. Sup. 16693 (Colella, F.S.M., 2001); Dawns v. Nash, 15 S.M.D. ___, 7 Conn.Ops. 1302, 2001 Ct. Sup. 14254
(Colella, F.S.M., 2001); Taylor v. Martin, 14 S.M.D. ___,26 Conn.L.Rptr. 404 (2000); McNealy v. Dancy, 13 S.M.D. 107, 113,1999 Ct. Sup. 12793 (1999); Cardona v. Negron, 13 S.M.D. 133, 142,1999 Ct. Sup. 10847 (Matasavage, F.S.M., 1999).
In this case a court appointed guardian ad litem represented Debran's CT Page 4663 independent interest. Attorney Street initially seemed somewhat ambivalent as to whether the judgment should be opened. Ultimately, she concluded that the judgment should be opened so that the biological father can be determined. "I think ifs best for the child to have the right father identified. . . . And then once that's identified he will surely be the legal father, and there won't be any question about it any longer." Transcript 12/20/2001, at 58. Attorney Street also reported that the child had rarely seen the defendant and that there was no bonding although the child understands that the defendant is her father "to the extent that, a child her age can understand that." Courts have been more disposed to open a paternity judgment where the putative father had no bonds or relationship with the child. Shelby v. Shelby,13 Conn.L.Rptr. 130, 1994 Ct. Sup. 12205 (1994).
Debran has some imparted understanding that the defendant is her father but has not developed a significant child-parent relationship. In view of this fact and the tender age of the child, the court finds that Debran's best interests are better served by a correct biological determination, even at the risk of an interruption of child support.
 VI
The defendant is not precluded by estoppel, laches or waiver from opening the paternity judgment at this time. Cardona v. Negron, supra, 13 S.M.D. 141. The failure of the State to provide notice to the defendant of the original judgment proscribes a finding of unreasonable delay[11]. The defendant filed his first motion to open on the same day he claims he learned of the judgment. Nor has the defendant by his actions created any reliance by either the plaintiff or the child on his role as father. In any event it has been held that fathering the child, including voluntary support should be encouraged as a matter of public policy, hence should not be the basis for estoppel. J.C. v. G.C., 21 Conn.L.Rptr. 255
(1998).
 VII
In closing arguments, the defendant's counsel raised for the first time that the court not only open the judgment but dismiss the petition. Transcript 12/20/2001, pp. 50-53. The defendant's argument is essentially the converse of the State's jurisdictional claim discussed earlier in this decision. The defendant correctly points out that since the court held the service of the petition to be invalid, the court did not have personal jurisdiction over the defendant. This was correct at the time of the judgment.
However, the defendant filed a pro se appearance on July 23, 1001, and CT Page 4664 counsel filed an appearance on his behalf on October 16, 2001. The filing of an appearance concedes personal jurisdiction. Thereafter, the defendant had thirty days to file a motion to dismiss. No such motion was filed. According to Practice Book § 10-30 he thereafter waived any claim of want of personal jurisdiction as grounds for a dismissal of the case. Pitchell v. City of Hartford, 247 Conn. 422, 433, 722 A.2d 797
(1999). Unlike subject matter jurisdiction, which can not be waived, in personam jurisdiction can be waived[12]. Brunswick v. Inland WetlandsCommission, 222 Conn. 541, 554, 610 A.2d 1260 (1992).
The defendant claims that either the court should sua sponte dismiss the case, or grant what amounts to an oral motion. He cites as authorityCollins v. Scholz, 34 Conn. Sup. 501, 373 A.2d 200 (1976). The court holds that a close reading of Collins v. Scholz reinforces rather than contradicts its conclusions. It is true that the court in that case not only opened the judgment but dismissed the case. However, counsel in that case filed a special appearance, thereby avoiding any waiver of jurisdictional claims. Furthermore, after the motion to open was granted the defendant in Collins v. Scholz filed a "motion for further order", which precipitated the dismissal. It was that motion, not the motion to open, that the court deemed to implicate the jurisdictional issue.
Although approving of this result the Supreme Court stated: "Once the judgment was opened the action had the same status as it did before thejudgment had entered. Ordinarily a defendant would file a plea in abatement to raise the issue of lack of in personam jurisdiction based on invalid service of process." Id., 506 (emphasis added). The plea in abatement has been superceded by the motion to dismiss. In the present case the granting of the motion to open would restore the status quo ante. The paternity petition would be pending and because no motion to dismiss was filed within thirty days of the filing of a general appearance, the defendant waived any further claim of lack of personal jurisdiction. See also Rodney v. Rodney, 29 Conn. Sup. 92, 94, 272 A.2d 315
(1970) (after finding abode service invalid, the court opened judgment but did not dismiss the case). Pinder v. Pinder, 42 Conn. App. 254,679 A.2d 973 (1996) and other cases cited by the defendant support his attack on the judgment but do not require dismissal of the action.
 VIII
The defendant was not properly served with the paternity petition and he did not have notice of either the trial date or of the default judgment until he learned of it by chance on July 23, 2001. He has not had the opportunity to address the case on the merits. Furthermore, it is in the best interests of the minor child that an accurate biological determination be made. Accordingly, the motion to open the judgment is CT Page 4665 granted. The paternity judgment is opened and vacated. The petition is restored to pending statuts on the docket.
The court presumes that one or more of the parties intend to move for genetic tests. Motions should be filed within ten days after receipt of this decision. The defendant should also file an answer to close the pleadings. The motions, if properly filed, are set down for hearing on Tuesday, May 21, 2001. if there is no objection, the plaintiff and defendant may be excused from appearing in court on that date. The court will notify the parties of a subsequent trial date at which their attendance will be required[13].
BY THE COURT
Harris T. Lifshitz Family Support Magistrate